# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-2196

ROBERT J. INGRAM, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued March 6, 2007                    Decided  May 23, 2007         )
 )

*Arie M. Michelsohn*, of Washington, D.C., with whom *Mark R. Lippman* of La Jolla, California, was on the brief, for the appellant.

*Jeffrey J. Schueler*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Carolyn F. Washington*, Deputy Assistant General Counsel; and *Lavinia A. Derr* were on the brief, all of Washington, D.C., for the appellee.

*Linda E. Blauhut* and *Jennifer A. Mogy*, both of Washington, D.C., were on the brief for the Paralyzed Veterans of America as amicus curiae.

*Kenneth M. Carpenter*, of Topeka, Kansas, was on the brief for the National Organization of Veterans' Advocates, Inc., as amicus curiae.

Before MOORMAN, LANCE, and SCHOELEN, *Judges*.

*Per Curiam*:   The appellant, veteran Robert J. Ingram, appeals through counsel a December 12, 2003, decision of the Board of Veterans' Appeals (Board) that denied entitlement to an effective date earlier than April 15, 1992, for the grant of compensation benefits under 38 U.S.C. § 1151 for residuals of a pneumonectomy.  Record (R.) at 1-10.  The parties each filed briefs, and the appellant filed a reply brief.  Subsequently, the Court sua sponte ordered the parties to file supplemental briefs addressing what impact, if any, the holding of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Andrews v. Nicholson*, 421 F.3d 1278 (Fed. Cir. 2005), has on

this case. Thereafter, the Court heard oral arguments in the case and issued on July 12, 2006, an opinion that vacated the Board decision and remanded the matter for further proceedings. *Ingram v. Nicholson*, 20 Vet.App. 156 (2006).

The Secretary subsequently filed a motion for reconsideration or, in the alternative, for en banc review, of this Court's decision in light of the Federal Circuit's decision in *Deshotel v. Nicholson*, 457 F.3d 1258 (Fed. Cir. 2006), *reh'g and reh'g en banc denied* (Dec. 5, 2006). In response to the Secretary's motion, the Court issued an order directing the parties to file a second set of supplemental briefs, invited participation by amici curiae, and heard oral arguments. The Court grants the Secretary's motion for reconsideration to the extent provided herein, namely, for the Court's consideration of *Deshotel*, *supra*, withdraws its July 12, 2006, decision, and issues this decision in its place. In this new decision, the Court will again vacate the Board decision and remand the matter for further proceedings consistent with this decision.

## I. FACTS

The appellant served on active duty in the U.S. Marine Corps from September 1964 to September 1968. R. at 14. In April 1985, he underwent a right bronchoscopy and right pneumonectomy at a VA medical center in Salt Lake City, Utah. R. at 16-21. On May 8, 1986, the Los Angeles, California, VA regional office (RO) received the appellant's initial formal application for VA benefits. R. at 23-26. The appellant submitted his claim on VA Form 21-526, Veteran's Application for Compensation or Pension. R. at 23-26. Under the section entitled "Nature and History of Disabilities" and in response to item 24, entitled "Nature of sickness, disease or injuries for which this claim is made and date each began," the appellant wrote: "Feb.–1985–Right lung was removed, Salt Lake City, Utah, VA Hospital." R. at 24. He also provided responses to items 29A through 32E, under the section entitled "if you claim to be totally disabled," as well as responses to items 33A through 33E, and items 34A through 39B, which contained the instruction that these items should be completed only if the applicant is applying for "non-service-connected pension." R. at 25-26.

On August 12, 1986, the RO received the appellant's statement in support of claim wherein he stated:

The removal of a vital organ (right lung) has greatly decreased my capacity for air–lung capacity–by fifty percent. Also[,] I am not capable under this condition to continue my normal life style.

I attend[ed] four years of carpenter apprenticeship course at Orange Coast College in [Costa] Mesa, CA, 1972-1975, to obtain a skillful trade, but now under these adverse medical condition[s], I am unable to continue in my skillful trade.

R. at 34.

On August 14, 1986, the RO denied a claim for non-service-connected pension benefits because the appellant was not considered permanently unemployable. R. at 28. The decision stated: "Although the veteran's disability meets schedular requirements for pension, he is not considered to be unemployable permanently. His age and occupation should permit some employ[ment] in the future." *Id.* An RO letter accompanying the decision discussed only disability pension benefits:

The law requires that you must be both permanently and totally disabled to be entitled to disability pension. Your condition is totally disabling now, but not established as permanent. The medical evidence of record indicates that your condition will improve and you will not be permanently and totally disabled.

R. at 30. The appellant did not appeal that decision.

On April 15, 1992, the appellant filed a second VA Form 21-526, Veteran's Application for Compensation or Pension. R. at 50-53. Under the section entitled "Nature of sickness, disease or injuries for which this claim is made and date each began," the appellant wrote: "Right Pneumonectomy 1985[;] Esophageal fistual 1986[;] Gastrostomy Tube 1986." R. at 51. In June 1992, the appellant submitted correspondence to the RO asserting, inter alia, that as a result of the 1985 surgery and VA's negligence, he developed an esophageal leak. R. at 57. In June 1995, the RO denied his claim for benefits under 38 U.S.C. § 1151 for disability caused by VA treatment. R. at 352-56. However, on appeal in June 1999, the Board awarded compensation benefits under 38 U.S.C. § 1151 for residuals of a pneumonectomy based on an additional disability resulting from treatment in a VA facility. R. at 427-37. On January 20, 2000, the RO awarded a 60% disability rating, effective from October 7, 1996. R. at 456-59. The appellant filed a Notice of Disagreement (NOD) in May 2000, and the RO issued a Statement of the Case (SOC) in February 2002 assigning an earlier effective date of April 15, 1992. R. at 461, 470-77. The veteran perfected his appeal to the Board. R. at 479.

3

In the decision on appeal, the Board denied an effective date earlier than April 15, 1992. R. at 1- 10. In denying the appellant's request for an earlier effective date, the Board determined, inter alia, that neither his May 1986 application for benefits nor his August 1986 statement in support of claim could have been construed as a claim for compensation benefits under 38 U.S.C. § 1151, and therefore, an effective date back to 1986 was not warranted. R. at 8-9. In reaching this conclusion, the Board stated: "There is nothing in the four corners of [the May 1986 application] that showed an intent that the veteran was claiming compensation benefits under the provisions of 38 U.S.C.[] § 1151. Specifically, there was no allegation of negligence or lack of proper skill, nor did the veteran make some other allegation of the surgery having been done improperly, as to the pneumonectomy that was done at that time." R. at 8. The Board further concluded that there was nothing in the appellant's August 1986 assertion that the surgery had reduced his lung capacity by 50% "when read alone or with the VA Form 21-526, [that] would indicate an intent to file a claim for compensation benefits under the provisions of 38 U.S.C. § 1151. Again, the veteran was not claiming that the surgery was done improperly or that VA had committed negligence or showed lack of proper skill in performing the pneumonectomy." R. at 9. Based on this analysis, the Board concluded that the preponderance of the evidence was against finding that the veteran had filed a claim under section 1151 in 1986. R. at 9.

## II. THE PARTIES' ARGUMENTS

On appeal, the appellant asserts that the Board erred in 2003 when it determined that his May 1986 and August 1986 filings did not constitute informal claims for compensation benefits under 38 U.S.C. § 1151, which would have entitled him to the assignment of an earlier effective date. Appellant's Brief (Br.) at 3-9; *see Norris v. West*, 12 Vet.App. 413 (1999) (holding that when an RO fails to adjudicate a reasonably raised claim it remains pending). In this regard, he maintains that VA had a duty to sympathetically read his pro se pleadings and determine all potential claims raised by the evidence, and, therefore, the Board erred when it treated his 1986 application as one exclusively for pension benefits. Br. at 4-5. In response, the Secretary maintains that there was no indication in either filing that demonstrated an intent by the appellant that he was claiming benefits under 38 U.S.C. § 1151. Secretary's Br. at 4-10.

4

On October 4, 2005, the Court sua sponte ordered the parties to file supplemental briefs addressing what impact, if any, the Federal Circuit's holding in *Andrews* has on this case. Specifically, the Court referred to *Andrews'* conclusion that "when VA violates *Roberson*[ *v. Principi*, 251 F.3d 1378 (Fed. Cir. 2001),] by failing to construe the veteran's pleadings to raise a claim, such claim is not considered unadjudicated but the error is instead properly corrected through a CUE [(clear and unmistakable error)] motion." 421 F.3d at 1284. Both parties submitted supplemental briefs asserting that *Andrews* did not overrule the longstanding jurisprudence regarding pending claims and the statutory and regulatory framework underlying it. Both parties suggested that anything other than a narrow reading of *Andrews* would be unworkable because if the failure to construe a claim needs to be raised in the context of CUE, then under the facts of this case, the Court would have to find a finally adjudicated section 1151 claim in 1986–which is not shown in the record on appeal. Without any RO decision, there is no indication of the evidence of record concerning the claim, applicable law and regulation governing the claim, or any analysis applying the facts to the legal criteria–all inherent to any CUE challenge. CUE necessarily requires a *previous determination* that is final and binding. The Secretary's supplemental brief also points out that the Federal Circuit's own interpretation of *Andrews* suggests a narrow reading because in *Bingham v. Nicholson*, 421 F.3d 1346, 1349 (Fed. Cir. 2005), the panel stated: "[A]s we recently held in *Andrews*, the VA's failure to consider *all aspects* of *a* claim does not render its decision non-final but instead 'is properly challenged through a CUE motion.'" (Emphasis added.)

At this Court's first oral argument in this case in February 2006, the appellant maintained his prior position. However, without acknowledging or withdrawing his supplemental brief, the Secretary argued that this case is controlled by *Andrews* and that the appellant's theory cannot be considered because it can be properly raised only through a motion asserting CUE in the 1986 RO decision, and no argument based on CUE is before the Court. Thereafter, the appellant, pursuant to Rule 30(b) of this Court's Rules of Practice and Procedure, filed notices of supplemental authorities.

Following the issuance of this Court's decision in this case in July 2006, the Secretary filed a motion for reconsideration or, in the alternative, for en banc review. He argues that the Federal Circuit's decision in *Deshotel*, *supra*, which relies on the *Andrews'* holding, applies to the fact pattern in the instant case and that "the proper and exclusive remedy available to Mr. Ingram for any failure

5

to adjudicate a reasonably raised claim is the filing of a CUE motion." Motion for Reconsideration at 4. The Secretary asks the Court to apply the holdings in *Andrews* and *Deshotel*, and to dismiss Mr. Ingram's appeal because Mr. Ingram has presented no argument based on an assertion of CUE in the 1986 RO decision. *Id.*

On August 29, 2006, the Court sua sponte issued a second supplemental briefing order directing the parties to address applicable statutory and regulatory provisions concerning how claimants are notified of initial decisions by an RO and whether the Federal Circuit's decision in *Deshotel* controls the outcome of this case. The Court specifically referred to the following statement in *Deshotel*: "'Where the veteran files more than one claim with the RO at the same time, and the RO's decision acts (favorably or unfavorably) on one of the claims but fails to specifically address the other claims, the second claim is deemed denied, and the appeal period begins to run.'" *Ingram v. Nicholson*, U.S. Vet. App. No. 03-2196 (unpublished order Aug. 29, 2006) (quoting *Deshotel*, 457 F.3d at 1261). Both parties submitted supplemental briefs, and the Paralyzed Veterans of America (PVA) and the National Organization of Veterans' Advocates, Inc. (NOVA), each filed a supplemental brief as amicus curiae in support of the appellant.

The Secretary urges the Court to apply *Deshotel* and dismiss the appeal because Mr. Ingram has not challenged as CUE the 1986 RO decision "based on any failure to adjudicate" an asserted section 1151 claim. Second Supplemental (Suppl.) Br. at 18-19. The Secretary argues that the statutory (38 U.S.C. § 5104(b)) and regulatory (38 C.F.R. § 3.103 (1986)) authority regarding notification of VA decisions do not specify what kind of notice VA must give when two or more claims are filed at the same time, as opposed to what notification is required for decisions on claims filed separately, and that VA provided Mr. Ingram with "proper notice" of the August 1986 adjudication "of his May 1986 application for benefits" by letter of August 19, 1986. *Id*. at 13.

The appellant and amici NOVA and PVA argue that *Deshotel* is not applicable here. Specifically, the appellant argues that (1) 38 C.F.R. § 3.103(e) (1986) required VA's express determination, including a denial, of each and every claim; (2) the RO in 1986 gave no "reason for the decision" to deny a section 1151 claim and the claim is thus rendered unadjudicated; and (3) *Deshotel* is not binding as precedent here because it does not discuss § 3.103. Suppl. Br. at 1-11. Amicus NOVA argues that the facts in *Deshotel* are distinguishable from those in *Ingram* as to the

type of claims at issue. Amicus PVA contends that the concept of "pending claims" has a long history within VA and that sub silentio denials are contrary to VA practice regarding notice of a decision as enunciated in statutes, regulations, and manual provisions, and are contrary to the nature of an ex parte, nonadversarial system. PVA further maintains that *Deshotel* did not overrule any of its precedents and that *Deshotel* is an extension of *Andrews* and should be limited to its specific facts.

During oral argument on March 6, 2007, the Secretary clarified his position to be that the only remedy for an RO's failure to adjudicate a claim is either the filing of an NOD within one year of an RO action or the filing of a CUE motion. He equates the RO's failure to adjudicate a claim with the claim having been "deemed denied." He further views *Andrews* and *Deshotel* as not being limited by the type of claim involved and as supplanting the "pending claim" doctrine. He states that an application for benefits can contain multiple claims, and if the RO adjudicates one of the claims identified in the application, the RO has adjudicated the entire application, including all remaining claims that were made in the application even if those other claims are not addressed, generally or specifically, in the RO decision. The appellant does not read *Deshotel* as broadly as the Secretary and argues that although the 1985 RO decision in *Deshotel* did not explicitly deny the claim for secondary service connection for a psychiatric disability as a residual of the in-service head injury, the RO decision nevertheless provided implied notice to Mr. Deshotel that the RO had considered his claim.

The Court expresses its thanks to amici, PVA and NOVA, for their contributions, which are of tremendous value to the Court and are deeply appreciated.

### III.  ANALYSIS

A. Issue Presented

The question presented to the Court is not whether the Secretary has a duty to sympathetically read a pro se veteran's filings to determine whether a claim has been raised. It is beyond question that the Secretary has such a duty and that it applies not just to total disability based on individual unemployability (TDIU) ratings, but also to any claim for benefits. *See Szemraj v. Principi*, 357 F.3d 1370 (Fed. Cir. 2004). The question presented to this Court concerns the proper procedural time and

7

mechanism to assert an alleged failure of the Secretary to perform this duty. We begin with the proposition that as a Court we are reviewing specific decisions below that have been appealed to us. *See* 38 U.S.C. § 7252(a) (granting the Court jurisdiction "to review decisions of the Board"). Thus, in order for this Court to have jurisdiction to review an asserted error related to the failure to sympathetically read a claimant's filings, the claimant on appeal here must be asserting that the error occurred in the decision on appeal to the Court or that the error occurred in a final decision presented in the context of a CUE motion.

In the context of the case before us, we must determine whether the arguments raised on appeal are an improper attempt to use an appeal of the December 2003 Board decision [hereinafter "effective-date decision"] as a collateral attack on the 1986 RO decision. *See Cook v. Principi*, 318 F.3d 1334, 1337 (Fed. Cir. 2002) (en banc). In essence, we must determine whether the 1986 RO decision decided a section 1151 claim, which would now have to be the subject of a collateral attack, or whether the alleged section 1151claim in 1986 was still pending at the time of the appellant's 1992 correspondence and, therefore, is part of the present claim stream including this direct review. If we determine that the 1986 RO decision decided a section 1151 claim, then we do not have jurisdiction to review any alleged error in that decision, as that decision is final and not part of the claim presently on direct appeal. *See DiCarlo v. Nicholson*, 20 Vet.App. 52, 57-58 (2006) (once the Secretary has made a finding of fact, a later decision reconsidering that finding outside certain circumstances (e.g., outside the context of CUE or reconsideration by the Board Chairman) is ultra vires and must be set aside); *Beverly v. Nicholson*, 19 Vet.App. 394, 405 (2005) (whether a sympathetic reading of filings raises a claim is a question of fact). If we determine that any potential claim was still pending and part of the claim stream that resulted in the Board decision on appeal, then we would have jurisdiction to address the substance of the appellant's argument.

## B. Previously Established Law

### 1. 38 U.S.C. § 1151

In 1992, at the time that Mr. Ingram filed his claim for disability compensation benefits pursuant to 38 U.S.C. § 1151, the statute in effect provided in pertinent part:

> Where any veteran shall have suffered an injury, or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment . . . not the result of such veteran's own willful misconduct, and such injury or aggravation results in additional

> disability to or the death of such veteran, disability or death compensation under this chapter . . . shall be awarded in the same manner as if such disability, aggravation, or death were service-connected.

38 U.S.C. § 1151 (1992). Although that provision was later amended to incorporate a fault requirement, those amendments were made applicable only to claims filed on or after October 1, 1997. *See* Pub. L. No. 104-204, § 422(b)(1), (c), 110 Stat. 2926-27 (1996); *see also Brown v. Gardner*, 513 U.S. 115 (1994); *Boggs v. West*, 11 Vet.App. 334, 343-44 (1998). In *Jones v. West*, 12 Vet.App. 460 (1999), this Court held that the requirements for establishing a section 1151 claim parallel those that pertain to establishing a claim for service connection, set forth in *Caluza v. Brown*, 7 Vet.App. 498 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table). Thus, to establish entitlement to disability compensation benefits under section 1151 prior to the change in law, a claimant must have (1) medical evidence of a current disability; (2) medical evidence, or in certain circumstances lay evidence, of incurrence or aggravation of an injury as the result of hospitalization, medical, or surgical treatment; and (3) medical evidence of a nexus between the asserted injury or disease and the current disability. *Jones*, 12 Vet.App. at 464; *see also Jimison v. West*, 13 Vet.App. 75 (1999).

*2. Effective-Date Decisions*

Section 5110(a) of title 38, U.S. Code, governs the assignment of an effective date for an award of benefits:

> [T]he effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

38 U.S.C. § 5110(a). The implementing regulation similarly states that the effective date shall be the date of receipt of claim or date entitlement arose, whichever is later, unless the claim is received within one year after separation from service. *See* 38 C.F.R. § 3.400 (2006).

A Board determination of the proper effective date for an award of VA benefits is a finding of fact reviewed under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). *See Hanson v. Brown*, 9 Vet.App. 29, 32 (1996). "A factual finding 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Hersey v. Derwinski*, 2 Vet.App.

91, 94 (1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  The Court may not substitute its judgment for the factual determinations of the Board on issues of material fact merely because the Court would have decided those issues differently in the first instance.  *Id.*

The Board is required to consider, and discuss in its decision, all "potentially applicable" provisions of law and regulation.  *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991) (emphasis added); *see* 38 U.S.C. § 7104(a); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order); *Sanden v. Derwinski*, 2 Vet.App. 97, 100 (1992).  The Board is also required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court.  *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990).

### 3. Pending Claims

The Secretary defines a "pending claim" as "[a]n application, formal or informal, which has not been finally adjudicated."  38 C.F.R. § 3.160(c) (2006).  This definition predates the creation of this Court.  *See* 38 C.F.R. § 3.160(c) (1988) (same as current version).  Consistent with this regulation, in several instances, this Court has held that a claim remains pending–even for years–if the Secretary fails to act on a claim before him.  *See*, *e.g.*, *Norris*, 12 Vet.App. at 422 (concluding that TDIU claim reasonably raised in 1987 and 1989 but not decided remained pending at RO).  Similarly, a decision may be rendered nonfinal when "the time for appealing either an RO or a Board decision did not run where the [Secretary] failed to provide the veteran with information or material critical to the appellate process."  *Cook*, 318 F.3d at 1340 (discussing *Tablazon*, *Hauck*, *Kuo*, and *Ashley*, all *infra*).

In *Cook*, the Federal Circuit observed that this Court has tolled the period of time for a claimant to act after an RO decision, leaving the case in a nonfinal status when the Secretary has failed (1) to notify a claimant of the denial of a claim, *see Hauck v. Brown*, 6 Vet.App. 518, 519 (1994); (2) to mail a claimant a copy of the Board decision pursuant to 38 U.S.C.§ 7104(e), *see Ashley v. Derwinski*, 2 Vet.App. 307, 311 (1992); (3) to provide notice to the claimant of appellate rights, *see In the Matter of the Fee Agreement of Cox*, 10 Vet.App. 361, 375 (1997), *vacated on*

10

*other grounds*, 149 F.3d 1360 (Fed. Cir. 1998); or (4) to issue the claimant an SOC, *see Tablazon v. Brown*, 8 Vet.App. 359, 361 (1995); *Kuo v. Derwinski*, 2 Vet.App. 662, 666 (1992). All of these cases involved claims that had been explicitly decided by an RO in the first instance. Nonetheless, the essence of each case is that the time limitations pertaining to a veteran's right to appeal an adverse decision do not begin to run until the veteran has received proper notice that his claim was denied.

In this line of cases, we have also held that a pending claim can be addressed when a subsequent claim for the same disability is explicitly adjudicated. In *Myers v. Principi*, 16 Vet.App. 228, 229 (2002), the appellant's claim for service connection for a back condition was denied in April 1958. Within one year of the mailing of notice of that decision, the appellant submitted a letter to the RO that the Secretary failed to recognize was an NOD as to that decision. *Id.* The RO subsequently denied three requests to "reopen" the 1958 denial and the appellant did not attempt to appeal them. *Id.* Finally, in 1994 the RO rejected another attempt to "reopen" the claim, and that decision was appealed to the Board. *Id.* at 230. After a Board remand, the appellant was granted benefits, and he appealed the effective date assigned. *Id.* On review of the effective-date decision, this Court held that the original 1958 RO decision never became final because the NOD had not been processed, notwithstanding the intermediate denials of the three claims to "reopen." *Id.* at 235. As a result, the Board's 1997 decision was a continuation of the appeal that began with the 1959 NOD and "the veteran's original service-connection claim was part of the current claim stream." *Id.* at 236. The Court remanded the matter to the Board to assign an appropriate effective date based on his original claim. *Id.* Hence, under *Myers*, if a claim is left pending, it can be addressed when a subsequent "claim" is processed.

### 4. CUE Motions

A claim of CUE is a collateral attack on a final decision by an RO or the Board. *Disabled Am. Veterans v. Gober*, 234 F.3d 682, 696-98 (Fed. Cir. 2000), *cert. denied,* 532 U.S. 973 (2001). Each theory of CUE is a separate claim. *Andre v. Principi*, 301 F.3d 1354 (Fed. Cir. 2002) ("[E]ach 'specific' assertion of CUE constitutes a claim that must be the subject of a decision by the Board before the . . . Court [of Appeals for Veterans Claims] can exercise jurisdiction over it."); *Jarrell v.*

*Nicholson*, 20 Vet.App. 326, 332 (2006) (en banc) ("[E]ach new theory of CUE is a separate and distinct matter.").

The claimant must provide some degree of specificity as to what the alleged error is and, unless it is the kind of error that, if true, would be CUE on its face, "persuasive reasons must be given as to why the result would have been manifestly different but for the alleged error." *Fugo v. Derwinski*, 6 Vet.App. 40, 44 (1993); *see also Bustos v. West*, 179 F.3d 1378, 1380-81 (Fed. Cir. 1999) (adopting this Court's interpretation of 38 C.F.R. § 3.105), *cert. denied*, 528 U.S. 967 (1999). To establish CUE in a final decision of an RO or the Board, a claimant must show that (1) either the correct facts known at the time were not before the adjudicator, or that the law then in effect was incorrectly applied, and (2) had the error not been made, the outcome would have been manifestly different. *Grover v. West*, 12 Vet.App. 109, 112 (1999). A mere disagreement with how the facts were weighed or evaluated is not enough to substantiate a CUE claim. *Damrel v. Brown*, 6 Vet.App. 242, 246 (1994). Nor does CUE include the otherwise correct application of a statute or regulation where, subsequent to the decision challenged, there has been a change in the interpretation of the statute or regulation. *Jordan (Timothy) v. Nicholson*, 401 F.3d 1296, 1298-99 (Fed. Cir. 2005); 38 C.F.R. § 20.1403(e) (2006). Moreover, the failure to address a specific regulatory provision involves harmless error unless it is shown that the outcome would have been "manifestly different" had it been addressed. *Fugo*, 6 Vet.App. at 44. "Silence in a final RO decision made before February 1990 cannot be taken as showing a failure to consider evidence of record." *Eddy v. Brown*, 9 Vet.App. 52, 58 (1996).

### C. Theories of the Case

*1. Appellant's Theory: The effective-date decision incorrectly identified the claim that was granted.*

The essence of the appellant's theory is that the Board decision presently on appeal to the Court erred during the assignment of his effective date when the Secretary incorrectly identified which of his submissions was the claim that led to the award of benefits. He maintains that the April 1992 document that the Secretary identifies as the relevant claim under section 5110 was not a new claim but merely correspondence pertaining to the pending and unadjudicated May 1986 claim. This theory draws support from 38 C.F.R. § 3.160(c), *Myers*, *supra*, and the numerous decisions that hold when an appellant submits a claim or takes an action on a claim that puts the ball into the Secretary's

12

court, it remains there–possibly for years–until the Secretary takes appropriate action to return the onus to the claimant to act within the time periods specified by statute and regulation. *See Tablazon*, *Hauck*, *Kuo*, and *Ashley*, all *supra*.

*2. Secretary's Theory: The 1986 RO decision sub silentio denied the appellant's section 1151 claim.*

The essence of the Secretary's theory is that even if the May 1986 application raised a claim under section 1151, the August 14, 1986, RO decision that denied non-service-connected pension benefits also denied the section 1151 claim sub silentio.[1] Accordingly, there was no claim pending prior to 1992 and the proper procedure for raising the issue is for the appellant to file a motion asserting CUE in the 1986 RO decision. As no such motion has been filed or decided by the Board, the Secretary argues that this Court lacks jurisdiction to consider the appellant's theory of error as part of a direct review of the decision that assigned an effective date to the appellant's 1992 claim. The Secretary draws support for this theory from the Federal Circuit's statement in *Andrews*: "[W]hen the VA violates *Roberson* by failing to construe the veteran's pleadings to raise a claim, such claim is not considered unadjudicated but the error is instead properly corrected through a CUE motion." 421 F.3d at 1284. The Secretary also relies on the Federal Circuit's statement in *Deshotel*: "Where the veteran files more than one claim with the RO at the same time, and the RO's decision acts (favorably or unfavorably) on one of the claims but fails to specifically address the other claims, the second claim is deemed denied, and the appeal period begins to run." 457 F.3d at 1261. In essence, the Secretary is asserting that the appellant's attempt to raise the alleged error in this separate proceeding is an unauthorized collateral attack outside the scope of those permitted by Congress. *See Cook*, 318 F.3d at 1341 (overruling the decision in *Hayre v. West*, 188 F.3d 1327 (Fed. Cir. 1999), that "grave procedural error" prevents a decision of the Secretary from becoming final).

*3. The Conflict Between the Theories*

---

[1] The Secretary also argues that the Board properly determined that there was no section 1151 claim made in 1986. We address this argument in Part III.E, below, after first addressing whether the 1986 RO decision was a final decision on a section 1151 claim. If the 1986 RO decision was a final decision on a section 1151 claim, such former argument would be moot.

13

The two theories outlined above cannot coexist because they are based on inconsistent factual premises. The first theory relies on the proposition that there was no decision on the alleged 1986 section 1151 claim while the second theory relies on the 1986 RO decision as a final decision on a section 1151 claim, which decision must be challenged for CUE. In other words, either the appellant in this case is trying to bypass the congressionally-authorized procedures for collaterally attacking the final 1986 RO decision or the Secretary is incorrect to assert that the appellant must attempt to collaterally attack a decision that the appellant asserts is irrelevant to the alleged section 1151 claim that was pending under § 3.160(c) until 1992 and is now on direct appeal.

Accordingly, the question presented is: Assuming a section 1151 claim has been reasonably raised by a claimant, is that claim denied sub silentio by an RO decision that explicitly adjudicates a claim for non-service-connected pension and that does not contain any language indicating that the RO considered the section 1151 claim, or does that claim remain pending under § 3.160(c) and *Myers* until an RO decision addresses the claim (either by explicitly adjudicating it or by indicating that it was considered)?

## D. Resolving the Conflict

For the reasons listed below, we conclude that a reasonably raised claim remains pending until there is either a recognition of the substance of the claim in an RO decision from which a claimant could deduce that the claim was adjudicated or an explicit adjudication of a subsequent "claim" for the same disability. *See Deshotel* and *Myers*, both *supra*; 38 C.F.R. § 3.160(c). If there is no final denial of the original claim prior to the granting of the subsequent "claim," then, as part of his or her appeal of the effective-date decision, an appellant can raise the fact that he or she filed the original claim for the same disability at an earlier date than the claim which was subsequently granted. In other words, if the appellant believes that the Secretary has incorrectly determined the date when his claim began, he may argue that the "claim" identified was merely additional correspondence on his previously pending claim.

### 1. Examination of Precedent

We begin by looking at the crux of the problem: the apparent inconsistencies between *Norris*, *Roberson*, *Andrews*, and *Deshotel*. At the first oral argument, the Secretary asserted that *Andrews* had overruled *Norris*. At the second oral argument, the Secretary argued that *Deshotel* provides

14

additional support for his theory. Based on the analysis below, the Court disagrees. While each of these decisions discusses related concepts, they are factually distinguishable from each other and from the other relevant decisions in this area.

*Norris* is the first of the decisions at issue. In *Norris*, the appellant filed a claim for an anxiety disorder. 12 Vet.App. at 414. The claim was granted, and he was assigned a schedular rating and an effective date. *Id.* Two later decisions of the Board (in 1980 and 1985) granted an increased schedular rating and denied a TDIU rating. *Id.* Following those decisions, the appellant underwent numerous hospitalizations, each of which resulted in an RO decision that awarded the appellant a temporary total disability rating for the period of his hospitalization under 38 C.F.R. § 4.29 (1989) and "continued" his 70% schedular rating thereafter. *Id.* at 415-16. The evidence at the time of the RO decisions from June 1987 included evidence of unemployability. *Id.* However, the issue of TDIU was not considered or decided by the RO. After the RO decisions became final, the appellant filed a motion to revise the June 1987 and February 1989 RO decisions on the basis of CUE because they failed to adjudicate TDIU. *Id.* at 416.

The Court determined that where, as in *Norris*, the claimant has already been granted service connection for a disability and has a schedular rating that meets the minimum criteria of 38 C.F.R. § 4.16(a) (i.e., he had at least a 60% rating for his psychiatric disorder) and a VA examination report indicated unemployability due to that disability, the claimant has made an informal claim for TDIU, and VA must adjudicate TDIU. *Id.* at 420-21. The Court concluded that such an informal claim had been "raised to the RO and was not adjudicated. Thus, there is no final RO decision on this claim that can be subject to a CUE attack." *Id.* at 422. We note that *Norris* held that the TDIU claims reasonably raised in 1987 and 1989 remained pending at the RO, and did not reach the issue of the ultimate fate of the appellant's claims. The holding of *Norris* was "the Board decision determining that CUE was not committed in [the] 1987 and 1989 RO decisions is AFFIRMED for the reasons that are contained herein." *Id.* (capitalization in original). The practical conclusion of *Norris* was that the 1987 and 1989 RO decisions did not adjudicate the informal claims for TDIU raised by that evidence when they "continued" or "resumed" the previously awarded 70% rating after the hospitalization. *Id.* at 415-16. In other words, although there was RO action following shortly after the VA examination report that raised the TDIU claim, the RO action that "continued" the prior

rating did not constitute an adjudication of the TDIU claim. There was no indication that the RO in issuing its decision had considered the TDIU claim, but rather there was an indication that the RO was acting only with a view towards determining whether the veteran's condition had improved.

The second decision in this line of cases is *Roberson*. *Roberson* also involved a TDIU claim. In *Roberson*, the Federal Circuit found that *Norris* "is both on-point and informative." 251 F.3d at 1383. The Federal Circuit further stated that "[t]he facts of *Norris* are similar to the present case" (both appellants received 70% disability ratings for a mental disorder) but concluded that "the facts of *Norris* are distinguishable from [the appellant's] situation" because in *Norris* informal claims, which were found to raise TDIU, were made subsequent to the initial rating determination whereas in *Roberson* TDIU was found to have been raised as part of the initial claim for service connection because he requested the highest rating possible (i.e., assertion of unemployability made prior to the initial RO decision that granted service connection and awarded a rating). *Id.* After concluding that the cases were factually distinguishable, *Roberson* went on to say:

> *Unlike Norris*, Roberson's original medical disability claim was decided by the RO and is the claim for which Roberson seeks the highest rating possible. Ratings decisions by the DVA are deemed "final and binding . . . as to conclusions based on the evidence on file at the time the [DVA] issues written notification of the decision." 38 C.F.R. § 3104(a) (1994). *But see Hayre v. West*, 188 F.3d 1327, 1333 (Fed. Cir. 1999) ("[a] breach of duty to assist in which the VA failed to obtain pertinent [evidence] specifically requested by the claimant and failed to provide the claimant with notice explaining the deficiency is a procedural error ... that vitiates the finality of an RO decision for purposes of a direct appeal"). Roberson has not alleged that the VA failed to obtain pertinent evidence. *Thus, Roberson's claim has been finally decided by the RO.*

251 F.3d at 1383-84 (emphasis added). Accordingly, *Roberson* expressly considered and did not overrule *Norris*. Rather *Roberson* was narrowly written to leave the "on-point and informative" decision in *Norris* intact. It found TDIU had been denied by the RO decision on the appellant's initial disability rating after he had requested "the highest rating possible" disability rating. There is no suggestion in *Roberson* that a decision on a wholly different claim could be regarded as a final decision on a claim not mentioned in that decision.

Similar to *Roberson*, in *Andrews*, the appellant was granted service connection and assigned a disability rating for post-traumatic stress disorder (PTSD) in a 1983 RO decision. 421 F.3d at

1280. Although there was evidence that the appellant was unemployable, the RO did not expressly decide whether the appellant was entitled to TDIU. *Id.* Similarly a 1985 RO decision increasing the appellant's disability rating did not expressly decide whether the appellant was entitled to a TDIU rating. *Id.* In 1995, the appellant filed a motion asserting CUE in the 1983 and 1985 decisions for failing to apply correctly the disability schedule. *Id.* "At no time [in the proceedings before the Secretary] did [the appellant] argue that the RO in 1983 or 1985 had erred in failing to consider Andrews as having raised a TDIU claim." *Id.*

The Secretary argued to the Federal Circuit "that, even if the VA had erred in failing to construe the veteran's pleadings to raise a TDIU claim in the 1983 and 1985 proceedings, such an error should not be considered on a CUE motion. Rather, the government urges that the TDIU claim is still pending before the RO awaiting adjudication, and that the Veterans Court and this court are without jurisdiction because there is no Board decision for us to review." *Id.* at 1281. The Federal Circuit replied: "We disagree; the government's position is contradicted by our decision in *Roberson*. . . . [W]e clearly held in *Roberson* that the VA's failure to consider a TDIU claim in this manner is properly challenged through a CUE motion." *Id.* The Federal Circuit in *Andrews* then concluded that the appellant had not asserted the potential TDIU claim to the Board as a basis for finding CUE in the 1983 and 1985 RO decisions. *Id.* at 1284. As the only CUE theory asserted to the Board was an error in the schedular rating assigned, the TDIU theory of CUE was not reviewable until properly presented to and decided by the Board. *Id.*

The Federal Circuit addressed, outside of the context of TDIU, an appellant's argument that the failure to address a claim in an RO decision rendered such a claim pending and unadjudicated in *Deshotel*. In 1984, the appellant filed an application to reopen a previously denied claim for service connection for the residuals of a head injury. *Deshotel*, 457 F.3d at 1259. The RO conducted medical examinations, including a psychiatric examination. *Id.* The RO awarded service connection for the post-traumatic headaches in 1985. *Id.* Although the RO decision did not specifically address any claim for a psychiatric disability, the narrative of the decision stated that a VA medical examination had shown no psychiatric symptomatology at that time. *Id.* at 1260. In 1999, the appellant sought service connection for a psychiatric condition. *Id.* The RO treated the claim as a claim to reopen based on new and material evidence. The RO awarded service connection for a

17

psychiatric disability secondary to the head injury and awarded an effective date based on the claim to reopen. *Id.* The appellant appealed, seeking an effective date as of the date the original claim had been filed 15 years earlier, which the RO construed as a claim of CUE in the original decision. *Id.*

On appeal, in an unpublished single-judge memorandum decision, this Court dismissed the appellant's appeal because the appellant abandoned the CUE claim decided by the Board. *Deshotel v. Nicholson*, 19 Vet.App. 465 (2005) (table). The Federal Circuit affirmed. In addressing the appellant's argument that the 1985 RO decision did not become final because it never explicitly addressed the psychiatric claim, the Federal Circuit stated the following: "Where the veteran files more than one claim with the RO at the same time, and the RO's decision acts (favorably or unfavorably) on one of the claims but fails to specifically address the other claim, the second claim is deemed denied and the appeal period begins to run." *Deshotel*, 457 F.3d at 1261. The Federal Circuit further observed that it had "considered this exact issue in *Andrews*," but observed that it was the Secretary that presented the argument in *Andrews*. *Id.* Under *Andrews*, the Federal Circuit determined that the appellant was required to present his argument as CUE. *Id.* at 1262.

We reject the Secretary's broad, sweeping reading of *Deshotel* as supplanting the pending claim doctrine. The Secretary would read *Deshotel* as holding that whenever multiple claims are filed at the same time in one application, regardless of the type of claims or the benefits sought, an adjudication of one claim only, without the mention of any other claim, results in an adjudication of all claims noted in the one application. We are unwilling to accept this position as an interpretation of *Deshotel*.

First, the Federal Circuit's statement in its decision that "[w]here the veteran files more than one claim with the RO at the same time, and the RO's decision acts (favorably or unfavorably) on one of the claims but fails to specifically address the other claims, the second claim is deemed denied, and the appeal period begins to run," 457 F.3d at 1261, cannot be divorced from the facts and holding of that case. *See Grantham v. Brown*, 114 F.3d 1156, 1158 (Fed. Cir. 1997) ("It is axiomatic that the language in *Hamilton*[ *v. Brown*, 39 F.3d 1574, 1586 (Fed. Cir. 1994)], as in any other case, must be read in light of the facts and issues that were before the Court when the language was written. The holding in *Hamilton* is much narrower than the decision below suggests."). It is important to note that in making that statement the Federal Circuit was addressing Mr. Deshotel's

18

contention that the 1985 RO decision was not final as to his psychiatric disability claim because that claim was "never explicitly addressed" in the 1985 RO decision. *Id*. The Federal Circuit rejected that argument by stating that the RO need not "specifically" address that claim. We take the Federal Circuit's carefully chosen words to mean that an RO decision may constitute an adjudication of a claim where the RO decision addresses the claim in a manner sufficient for a claimant to deduce that the claim was adjudicated. In *Deshotel*, the Federal Circuit had pointed out, in describing the 1985 RO decision, that although the RO "did not specifically address any secondary claim for psychiatric disability, . . . it did note in its narrative that the 'VA exam shows no psychiatric symptomatology noted at present time.'" 457 F.3d at 1259-60. From an RO adjudication that stated that there is no current psychiatric symptomatology, it is reasonable to expect a claimant to deduce that his claim for a psychiatric disability has been denied.

In contrast, Mr. Ingram asserts that he filed a section 1151 claim, which treats a disability as if it were service-connected and is in no way related to his claim for a non-service-connected pension. In fact, the only relationship between the section 1151 claim and the claim for pension benefits is that both claims stem from the appellant's pneumectomy (removal of a lung). Beyond that, each claim stands alone and is not contingent on any action (favorable or unfavorable) by the RO on the other claim. The elements of a section 1151 claim and a pension claim are entirely different. Each is separately statutorily based and defined. In a section 1151 claim, the claim is for service connection for the disability resulting from VA treatment. A claim for service-connected pension, however, does not involve establishing service connection of a disability. A veteran is entitled to a VA non-service connected pension if he or she has service for 90 days during a period of war and is permanently and totally disabled from a non-service-connected disability. 38 U.S.C. § 1521(a), (j). In a section 1151 claim, the veteran need not be a veteran of war and the resultant disability need not be permanent, which would be required in a claim for non-service connected pension. *See* 38 U.S.C. § 1521(a), (j); *Collaro v. West*, 136 F.3d 1304, 1308 (Fed. Cir. 1998) (listing elements of a disability compensation claim). A veteran is eligible to be rated permanently and totally disabled for pension purposes if certain rating percentage standards are met but the veteran's disabilities need not be service connected. *See* 38 C.F.R. § 4.17 (2006). If the percentage requirements are not met, a veteran may nevertheless be awarded pension if he or she is found to be

unemployable by reason of his or her disabilities, age, occupational background and other related factors. 38 C.F.R. § 3.321(b)(2) (2006).

Thus, when Mr. Deshotel was informed that his claim for service connection for residuals of a head injury had been granted, and was simultaneously informed that a VA medical examination demonstrated no psychiatric symptoms, he was reasonably on notice that a psychiatric disability was denied. A present disability is a requirement for an award of service connection and disability compensation benefits. *See Hickson v. West*, 12 Vet.App. 247, 253 (1999); *Caluza*, *supra*. If the RO's original decision in this case had found no lung disability, that might have been sufficient to put Mr. Ingram on notice that he was not entitled to section 1151 benefits. However when Mr. Ingram was informed that his claim for pension benefits was denied because his condition was "not established as permanent," he had no reason to know how a disability compensation claim based on section 1151 might have been decided by the RO. An award of disability compensation does not require that a disability be permanent. Rather, benefits may be awarded for any present disability, even if it is likely to improve. *See* 38 U.S.C. § 3.344 (2006) (discussing improvement in disabilities). Further, there was nothing in the August 1986 RO decision or cover letter that informed Mr. Ingram of anything that might relate to a disability compensation claim. The present case stands in contrast with *Deshotel* where, although not specifically addressed, the RO provided enough information in its decision for the claimant to reasonably know that he would not be awarded VA benefits for his asserted disability.

The Federal Circuit's decisions in *Roberson* and *Andrews* may be distinguished from the present case in the same manner. Both *Roberson* and *Andrews* involved the adjudication of claims in which the appellants argued that VA failed to adjudicate simultaneously raised claims for TDIU. In both cases, the Federal Circuit found that the underlying RO decisions were final and could only be attacked collaterally, even where the decision failed to mention TDIU. *See Andrews*, 421 F.3d at 1281 ("[W]e clearly held in *Roberson* that . . . VA's failure to consider a TDIU claim in this manner is properly challenged through a CUE motion.").

The Federal Circuit treated the TDIU claims in *Roberson* and *Andrews* similarly to the psychiatric disability claim at issue in *Deshotel*. That is, just as the Federal Circuit found that the appellant received general notice of the denial of the psychiatric claim in *Deshotel*, we understand

20

the Federal Circuit to have found that Mr. Roberson and Mr. Andrews received general notice of the denial of their respective TDIU claims in their respective RO decisions assigning a particular disability rating. To understand this point, one need only look at the nature of a TDIU claim. This Court has recognized that under some circumstances TDIU may be sought as part of an initial award of disability compensation benefits or as a type of increased-rating claim. *See Dalton v. Nicholson*, 21 Vet.App. 23, 32-34 (2007) (holding that a TDIU claim based on a condition that has already been service connected to be an increased-rating claim for the purpose of the application of 38 U.S.C. § 5110(b)(2)); *id*. at 34 (recognizing that under some circumstances an award of TDIU may not amount to an award of increased compensation where, for example, TDIU is awarded as part of an initial award of disability compensation benefits); *Hurd v. West*, 13 Vet.App. 449, 451-52 (2000) (applying law governing increased-rating claims to the award of TDIU); *Norris*, 12 Vet.App. at 420-22 (finding that TDIU "is in essence a claim for an increased rating" and applying the informal claim provisions of 38 C.F.R. § 3.157 to TDIU claims); *Wood v. Derwinski*, 1 Vet.App. 367, 369 (1991) (holding that a "claim for unemployability compensation was an application for 'increased compensation' within the meaning of [38 U.S.C.] § [51]10(b)(2)").

It is reasonable to say that an appellant who receives a disability rating that is less than 100% has notice of how his conditions have been rated and has the opportunity to appeal the rating decision. Even if he does not have a clear understanding of TDIU, he does have a clear statement of which disability is being rated and the fact that the Secretary has declared it to be less than 100% disabling. Hence, an appellant's ignorance of a particular reason for the denial of a total disability rating does not preclude him from understanding that an appealable decision has been made concerning his claims. However, by urging us to adopt a doctrine of sub silentio denials, the Secretary is suggesting in this case that the denial of a non-service-connected pension claim in 1986 gave the appellant adequate notice and opportunity to appeal the 1986 RO decision as to a section 1151 claim. This suggestion goes too far.

Then where does *Norris* fit within *Roberson*, *Andrews*, and *Deshotel*? The Secretary suggests that *Andrews* and *Deshotel* effectively overruled *Norris*. We cannot agree. First, that neither *Andrews* nor *Deshotel* specifically overruled *Norris* after *Roberson* found that *Norris* was "both on-point and informative" creates a strong presumption against finding that *Norris* was

21

overruled. *Roberson*, 251 F.3d at 1383. To hold otherwise necessarily involves finding that *Roberson* was overruled in part. We will not presume that the Federal Circuit would implicitly overrule its own caselaw both because a panel of the Federal Circuit cannot overrule the decision of another panel, *Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("This court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in banc*. Where there is direct conflict, the precedential decision is the first." (citations omitted)), and because the Federal Circuit has made itself clear when it intends to overrule its own caselaw, *see Cook*, 318 F.3d at 1341 ("We therefore overrule *Hayre* to the extent that it created an additional exception to the rule of finality . . . ."); *Bailey v. West*, 160 F.3d 1360, 1368 (Fed. Cir. 1998) (en banc) ("[P]revious statements that equitable tolling is unavailable against 38 U.S.C. § 7266(a) are overruled.").

We need not strain to reconcile *Norris* with *Deshotel* (and thereby with *Andrews*), because the Federal Circuit already did so in *Roberson*. As discussed above, after finding *Norris* to be "both on-point and informative," the Federal Circuit distinguished the posture of the two cases. The Federal Circuit determined in *Roberson* that the TDIU claim had been denied by the RO's award of an initial disability rating less than 100%. *Roberson*, 251 F.3d at 1383-84. Thus, CUE was the only appropriate way to attack the RO's decision. Regarding this Court's decision in *Norris*, however, the Federal Circuit observed "it was the *subsequent* informal claims that were found to raise TDIU." *Roberson*, 251 F.3d at 1383 (emphasis added) (citing *Norris*, 12 Vet.App. at 421). That is, because the TDIU claims in *Norris* were raised *after* the initial rating determination and because the 1987 and 1989 RO decisions did not mention claims for increased ratings or TDIU, those TDIU claims had not been decided by the RO decisions. In *Roberson*, the TDIU claim and the claim for which Mr. Roberson sought the highest rating possible were presented at the same time. 251 F.3d at 1383-84. That distinction between *Roberson* and *Norris* can be found in the sentence in *Deshotel* that the Secretary relies upon to argue that *Norris* has been overruled: "Where the veteran files more than one claim with the RO *at the same time*, and the RO's decision acts (favorably or unfavorably) on one of the claims but fails to specifically address the other claim, the second claim is deemed denied, and the appeal period begins to run." *Deshotel*, 457 F.3d at 1261 (emphasis added). Thus, *Norris* may be reconciled with *Andrews* and *Deshotel*, just as it was reconciled with *Roberson*.

22

Furthermore, the Federal Circuit's decision in *Moody v. Principi*, 360 F.3d 1306 (Fed. Cir. 2004), supports the proposition that raising a pending claim theory in connection with a challenge to the effective-date decision is procedurally proper. We find *Moody* instructive because it involved a veteran's assertion that an informal claim existed prior to 1994 as a result of the Secretary's duty to sympathetically read a veteran's pleadings and that a pending claim remained until 1996 when the RO adjudicated a subsequent claim for the same disability. In *Moody*, a 1996 RO decision granted TDIU and assigned a 1994 effective date because, according to the RO, that was the first time the veteran claimed that his psychiatric disorder was secondary to his service-connected prostatitis. 360 F.3d at 1309. In 1998, the veteran filed a CUE motion as to the 1996 effective-date decision–he argued that it was CUE not to find an earlier informal claim for secondary service connection based on his prior benefits claims and the evidence in the record at the time. *Id.* The Board rigorously applied the 38 C.F.R. § 3.155 (2005) informal claim regulation in assessing whether there was an earlier claim and rejected his CUE motion, and, on appeal to the Court, the veteran argued for a remand for the Board to consider *Roberson*.

The Federal Circuit in *Moody* held that "[t]he question is whether the B[oard], as required by *Roberson*, sympathetically read Mr. Moody's filings prior to June 24, 1994, in determining whether Mr. Moody made an informal claim for secondary service connection for his psychiatric disorder." *Moody*, 360 F.3d at 1310. Based on this ruling, the Federal Circuit remanded the matter to address, using the correct legal standard set forth in *Roberson*, the factual issue of whether a claim had been raised. *Id.* In remanding the matter for a determination whether an informal claim had been made prior to June 1994, the Federal Circuit left open the possibility that the Board would find as a factual matter that an informal claim for secondary service connection was in fact raised prior to June 1994 and that no decision on that claim was made prior to 1996–i.e., that the informal claim was *pending and unadjudicated from prior to June 1994 until May 1996*, when the RO granted the subsequent claim for secondary service connection and assigned the 1996 effective date to the rating. To be clear, while *Moody* did involve a CUE motion, it was a CUE motion that asserted error *in the effective-date decision*, not in a decision that allegedly denied the claim sub silentio.

Finally, we note that the Federal Circuit's en banc decision in *Cook* endorsed our pending claim caselaw. As discussed in Part III.B.3, *supra*, the en banc Federal Circuit in *Cook* favorably

23

reviewed our decisions in *Tablazon*, *Hauck*, *Kuo*, and *Ashley* and endorsed our holdings that a procedural default clock does not run while the ball is in the Secretary's court. 318 F.3d at 1340. In overruling the holding in *Hayre* that "grave procedural error" would prevent a decision of the Secretary from becoming final, *see Hayre*, 188 F.3d at 1333, the en banc Federal Circuit in *Cook* concluded that our caselaw on pending claims was distinguishable. The en banc Federal Circuit concluded that the appellant in *Hayre*–in spite of any "grave procedural error"–had received notice of the adjudication and an opportunity to appeal. *Cook*, 318 F.3d at 1341. Whereas, our pending claim caselaw illustrated situations where the appellant had been denied his appellate rights. *Id.* If we were to accept the Secretary's invitation to read *Andrews* and *Deshotel* broadly as endorsing a general doctrine of sub silentio denial, we would run afoul of this distinction recognized in *Cook*.

Accordingly, we reject the Secretary's position that *Deshotel* supplants the pending claim doctrine and this Court's decision in *Norris*. The Court believes the Federal Circuit must have intended a more limited application of *Deshotel*.

*2. Fair Notice of an RO Determination on a Claim and Other Concerns*

Reading *Andrews* and *Deshotel* as broadly as the Secretary suggests would run afoul of the due process concerns voiced by the en banc Federal Circuit in *Cook* and by this Court in *Thurber v. Brown*, where we noted that "VA's nonadversarial claims system is predicated upon a structure which provides for notice and an opportunity to be heard at virtually every step in the process." 5 Vet.App. 119, 123 (1993); *see* 38 U.S.C. §§ 5104(a) (requiring the Secretary, when making a decision affecting the provision of benefits to a claimant, to "provide to the claimant . . . notice of such decision"), 5104(b) (requiring the Secretary, when denying a benefit sought, to provide a statement of the reasons for the decision and a summary of the evidence considered); 38 C.F.R. § 3.103(b) (2006) ("Claimants and their representatives are entitled to notice of any decision made by VA affecting the payment of benefits or the granting of relief."). Given the profound consequences of adopting a broad, general doctrine of sub silentio denials, we do not think it appropriate to suggest that the Federal Circuit in *Andrews* and *Deshotel* meant to cast doubt on the Federal Circuit's en banc decision in *Cook*.

In addition to being inconsistent with the caselaw, adopting the Secretary's broad reading of *Deshotel*–that is, where multiple claims are filed in one application regardless of the types of claims or the benefits sought, if the RO adjudicates one claim, then any failure to adjudicate the other claim(s) is a denial of that other claim(s)–would result in effectively relieving, in a pro-veteran adjudicative environment, the Secretary of the following obligations: (1) The Secretary's duty to notify a claimant under 38 U.S.C. § 5103(a) of the information and evidence necessary to substantiate the claim; (2) the Secretary's duty to assist the claimant under 38 U.S.C. § 5103A in developing the claim, including obtaining service records and providing an examination; and (3) the Secretary's duty to provide reasons for its decisions, 38 U.S.C. § 5104. *See Sanders v. Nicholson*, __ F.3d __, __, No. 06-7001, 2007 WL 1427720, at *4, slip op. at 7 (Fed. Cir. May 16, 2007) ("If the VA denies a claim, it must provide the claimant with a statement of the reasons for the decision and a summary of the evidence considered.") (citing 38 U.S.C. § 5104(b)).

Such a broad reading of *Deshotel* would also cause confusion at the agencies of original jurisdiction, including the ROs, as to whether a claim was in fact denied and burden the VA system with premature appeals. A sweeping application of *Deshotel* would not only require a claimant to

25

submit an NOD as to all claims not mentioned in the RO adjudication of the single claim but also require the ROs to issue SOCs as to those claims that are still being processed.

Significantly, the Secretary's broad reading of *Deshotel* would also result in a shift of the burden onto a claimant to prove by the high standard of CUE that not only did the RO err in not providing reasons for the "deemed denial" but that the claimant was entitled to a *grant* of the benefits. Moreover, in the context of CUE, the claimant would not have the benefit of any evidence obtained after the original decision that denied the claim sub silentio.

In addition, as noted by the Secretary during oral argument, his reading of *Deshotel* is that the concept of a "deemed denial" is applicable even to RO decisions issued after 1989 when the Veterans' Benefits Amendment Act of 1989 enacted what is now 38 U.S.C. § 5104. Section 5104(b) provides: "In any case where the Secretary denies a benefit sought, the notice required by subsection (a) shall also include (1) a statement of the reasons for the decision, and (2) a summary of the evidence considered by the Secretary." 38 U.S.C. § 5104(b). The legislative history of section 5104 highlights a congressional intent that a veteran receive notice as to the reasons for a decision on the claim. For example, an explanatory statement of the U.S. Senate Committee on Veterans' Affairs, submitted into the Congressional Record by Senator Alan Cranston, expressed a concern regarding notice as to the denial of a claim and offered a remedy to the problem of notices of RO decisions that were often unclear and not informative and that did not provide claimants with sufficient information to make an informed decision as to whether or not to accept or appeal decisions on their claims:

> To remedy this problem, I introduced legislation, passed by the Senate as section 703 of S. 13. The compromise agreement includes a provision, section 115, which is derived from that legislation. This provision would require VA, every time it makes a decision which affects benefits, to notify the claimant of the decision and provide an explanation of how the decision may be appealed. In cases where the decision of VA has denied a claim for benefits, the notice that is provided to a claimant would be required to contain the reasons for the decision and a summary of the evidence that was considered in making the decision. . . .
>
> . . . .
>
> This provision specifies what information would be required to be provided in notices sent to VA claimants. Obviously, how clearly that information is conveyed will be of utmost importance to them. [The General Accounting Office] found in its June 22[, 1989,] report that VA notices "often stated only that the claims were denied

26

because service connection was not found." Such conclusory statements are of little help to a claimant who is trying to understand the decision and would not meet the requirements of this provision.

135 CONG. REC. S.16,443, 16,462 (Nov. 20, 1989) (statement of Sen. Cranston); Secretary's Appendix, Exhibit F at 119. The Secretary's broad reading of *Deshotel* is at odds with this legislative history and congressional intent that a claimant not only be informed of a denial of his claim but also be provided reasons for any such denial. If an expressly stated conclusory statement that a claim is denied because service connection was not found would not meet the statutory requirements, then how could silence in an RO decision as to a claim be deemed to meet the statutory requirements?

Notably, the statutory requirement that reasons be given for a decision on a claim had previously been a requirement in the Secretary's regulation since at least 1959 when 38 C.F.R. § 3.103 provided: "The claimant will be informed of his entitlement or nonentitlement, the reason, his right to appeal, and of the time limit within which an appeal may be filed." 38 C.F.R. § 3.103 (1959); *see* Secretary's Appendix B at 15. That requirement has been maintained in the Secretary's regulation throughout the years, including the current version, which provides: "The claimant or beneficiary and his or her representative will be notified in writing of decisions affecting the payment of benefits or granting relief. All notifications will advise the claimant of the reason for the decision . . . ." 38 C.F.R. § 3.103(f) (2006). The codification of this requirement provides support for the Secretary's then-existing regulatory obligation to notify the claimant of a decision on a claim.

Furthermore, the Secretary's reading of *Deshotel* would be at odds with other statutory provisions. For example, section 5108 provides: "If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." 38 U.S.C. § 5108. If a claim were denied without the Secretary having provided reasons for the denial, how would the claimant know what evidence he needs to reopen that denial in terms of new and material evidence? Similarly, how would a claimant know what is needed in order to lodge a CUE challenge under 38 U.S.C. § 5109A where the claimant is required to provide some degree of specificity as to what the alleged error is and to give persuasive reasons as to why the result would have been manifestly different but for the alleged error? In *Deshotel*, the claimant, after receipt of the 1985 RO decision arguably knew he needed,

27

at least, a current diagnosis of a psychiatric condition. Without some indication in the RO decision as to the basis of the denial, it would be impossible for a claimant to know whether he has obtained "new and material evidence" as required by section 5108 or evidence that "establishes the error" as required by section 5109A.

Aside from the support we find in prior caselaw, statutes, and regulations, the pending claim theory is clearly a preferable approach to administering the veterans benefits system. Treating the Secretary's failure to sympathetically read and adjudicate a reasonably raised claim as a pending claim benefits veterans because it protects their appellate rights and works no hardship on the Secretary in that it requires only that each claim be specifically addressed. If a veteran is aware of a particular benefit and makes an unambiguous claim for it, the Secretary's duty to sympathetically read his submissions is irrelevant. That duty primarily helps those veterans who have not clearly articulated that they are seeking a particular benefit. It is illogical to expect such veterans to immediately recognize when the Secretary has failed to adjudicate a reasonably raised claim because it is ignorance of the intricacies of potential claims that makes the duty necessary. Hence, if the law equates a VA failure to adjudicate a reasonably raised claim to a sub silentio denial of the claim, then it is unlikely that the veteran would have sufficient notice of the disposition of his claim to assert error on direct appeal. *Cf. Sanders*, __ F.3d at __, 2007 WL 1427720, at *8-10, slip op. at 15-19 (stressing importance of effective claimant participation in the processing of his or her claim and the uniquely pro-claimant nature of the VA benefits system). Instead, any error in the adjudication of that claim would have to be raised in a CUE motion. *See* 38 C.F.R. § 20.1403(c) (2006) (defining CUE as "a very specific and rare kind of error. It is the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error"); *see also Moody*, *supra*.

Moreover, even a savvy veteran may not be aware that there is a disagreement as to which document raised a claim until after an effective date is assigned. In this regard, we note that VA ROs do not operate under any form of a claim docket number system but, rather, assign one file number for all claims filed by a claimant regardless of when the claims were filed. Absent a fortuitous statement, there is nothing in an RO decision that would put a claimant on notice that all potential

28

claims raised by various documents were being addressed by that decision. Veterans benefits litigation is frequently piecemeal. Claims made in a single document may be decided by separate rating decisions if some need development while others do not. *See* VA Adjudication Procedure Manual (M21-1) Part III para. 2.01(h)(1)(b) ("Identifying Partial Grants"); *see also* Amicus PVA Br., Exhibit C (VA Adjudication Procedure Manual Rewrite, Part III, Subpart IV, Chapter 6, Section A ("Partial and deferred Rating Decisions")). Furthermore, quite often a veteran will not submit a single document. Instead, he will submit a continuous stream of evidence and correspondence. Rather than holding all the claims until every one is ready to be decided, the Secretary develops and decides multiple claims separately–often over a period of years. A veteran could easily submit what he believes to be a claim and receive from the Secretary an adjudication of a previously raised claim for the same disability. The veteran could then submit more correspondence on the claim he was trying to raise and receive a request from the Secretary for evidence or to report for an examination. There could be years of intervening appeals, remands, and revised decisions before the claim is actually granted and the assignment of the effective date reveals that the Secretary did not recognize the initial submission as a claim for the benefit. In the meantime, the decision that sub silentio denied the claim that the appellant alleges was reasonably raised has become final and can only be challenged for CUE. Once again, the veteran would have been denied direct review of the sub silentio denial because he had no reason to know that was an issue at the time he could have appealed that decision. Accordingly, accepting a broadly interpreted doctrine of sub silentio denials has grave implications for due process and protecting the appellate rights of veterans.

Of course, not every claim for a benefit will be granted. Accordingly, if a claim is denied, it is often irrelevant when it was first raised. There does not need to be any decision on the issue of when the claim was first raised unless and until it actually becomes relevant to an award of benefits. If a claim is granted, however, the date the claim was first raised is relevant to determining the effective date. Under *Myers*, the appellant can argue that an earlier claim for the benefits should be considered part of the same claim stream that eventually resulted in the award of benefits for the purpose of establishing the effective date. If a veteran believes that he has a pending claim for a benefit that has not received an initial decision, the veteran can unambiguously inform the Secretary that a particular benefit is being sought. The Secretary must then decide entitlement to the benefit

and, if relevant, address the issue of when the claim was first raised. *See DiCarlo*, 20 Vet.App. at 57 (holding that the finality of a specific claim is an issue that can be raised when relevant, but is not a procedure or claim in and of itself).

This is not to say that the question of when a claim was raised will never be relevant before an effective date is assigned. It may be relevant, for example, to determining which version, or versions, of the law is relevant to the substantive question of entitlement. *See Rodriguez v. Nicholson*, 19 Vet.App. 275, 288-89 (2005) (discussing considerations relevant to determining which version of a statute or regulation should apply when there is a change during the pendency of a case). However, it makes little sense to adjudicate the issue of when a claim was raised unless that issue will have some practical effect. In many cases, deciding whether or not a claim was reasonably raised below on the possibility that it might be relevant to a future effective-date determination amounts to nothing more than an advisory opinion. *See Waterhouse v. Principi*, 3 Vet.App. 473, 474 (1992) (the Court does not issue advisory opinions); *cf. Mintz v. Brown*, 6 Vet.App. 277, 281, 283 (1994) (Board lacked jurisdiction to entertain appellant's claim where he was seeking an advisory opinion).

### 3. Summary

The Secretary's failure to adjudicate a reasonably raised claim can be the basis of a CUE motion as to a final decision of the Secretary where the issue was relevant to a decision actually made. There are instances, as in *Roberson*, *Andrews*, and *Deshotel*, where it is reasonable to expect the claimant to know that his claim was implicitly denied by the action taken by the RO on a related claim, and the finality of that RO action can then be challenged by CUE. Where, however, as here, the RO decision expressly denied a claim for non-service-connected pension and did not address a claim for disability compensation under 38 U.S.C. § 1151 in any respect that would have given the appellant notice that it was denying such a claim, the RO decision did not constitute a final decision on any pending section 1151 claim. As discussed above, *Moody* allows an appellant to allege CUE in a final effective-date decision on the theory that the RO in that final decision had failed to correctly identify which document was the appellant's claim for purposes of assigning an effective date under section 5110. The appellant's theory in this case is no different from the theory of the appellant in *Moody*. The only difference is that, as a matter of procedure, the appellant here has

directly appealed his effective-date decision rather than allowing it to become final. *See Beverly*, 19 Vet.App. at 406 ("It would be illogical and unfair to require the appellant to wait until the Board decision is final and then face the high burden of proving CUE when any other error can be addressed immediately and more favorably when raised in a timely manner.")

Based on the above, we conclude that the Federal Circuit has neither overruled the pending claim doctrine articulated in *Norris* nor created a general doctrine of sub silentio denials that supplants the pending claim doctrine. We conclude *Deshotel* and *Andrews* stand for the proposition that, where an RO decision discusses a claim in terms sufficient to put the claimant on notice that it was being considered and rejected, then it constitutes a denial of that claim even if the formal adjudicative language does not "specifically" deny that claim. Because we find no such denial in this case, the appellant is correct that we have jurisdiction over his appeal because it is not a collateral attack on the final 1986 RO decision.

## E. Board Finding Regarding a Section 1151 Claim

Now that we are satisfied that the appellant is properly raising his assertion of error against the effective-date decision, we must review the Board's findings and conclusions below. The Board reviewed the 1986 filings and found that nothing in the four corners of either document could be construed as an intent to claim section 1151 benefits R. at 8-9. The Board focused on whether the appellant had alleged negligence or a lack of proper skill on the part of the VA physicians and whether he had expressed an intent to apply for section 1151 benefits. R. at 8-9. Both of these forms of analysis were legally incorrect. As the Federal Circuit explained in *Hodge v. West*, 155 F.3d 1356, 1362-63 (Fed. Cir. 1998), when it announced the sympathetic-reading requirement based on the legislative history of the Veterans' Judicial Review Act and Veterans' Benefits Improvement Act of 1988, Congress intended to preserve the nonadversarial nature of the VA system wherein the Secretary provides claimants with assistance in submitting and substantiating claims. Although there is no statutory or regulatory definition of "sympathetic reading," it is clear from the purpose of the doctrine that it includes a duty to apply some level of expertise in reading documents to recognize the existence of possible claims that an unsophisticated pro se claimant would not be expected to be able to articulate clearly. *Cf. Andrews*, 421 F.3d at 1283 (holding that the duty to sympathetically read submissions does not apply to pleadings through counsel).

As to the Board's suggestion that the appellant was required to allege negligence or lack of skill, measuring the appellant's submissions against a strict pleading requirement is fundamentally inconsistent with the concept of a sympathetic reading and, therefore, constituted legal error by the Board. The application of such a pleading requirement violates the duty to sympathetically read submissions because it required the appellant to demonstrate a level of sophistication that would render moot the duty to sympathetically read his pleadings. In other words, it is precisely because unsophisticated claimants cannot be presumed to know the law and plead claims based on legal elements that the Secretary must look at the conditions stated and the causes averred in a pro se pleading to determine whether they reasonably suggest the possibility of a claim for a benefit under title 38, regardless of whether the appellant demonstrates an understanding that such a benefit exists or of the technical elements of such a claim. The Board's suggestion that the appellant was required to articulate a specific intent to "claim . . . compensation benefits under the provisions of 38 U.S.C.A. § 1151" is similarly flawed. R. at 8, 9. The duty to sympathetically read exists because a pro se claimant is not presumed to know the contents of title 38 or to be able to identify the specific legal provisions that would entitle him to compensation. Again, there would be no need for the duty to sympathetically read pleadings if pro se claimants had encyclopedic knowledge of veterans law.

Finally, we hold that it was also error for the Board to suggest that it was limiting the material being reviewed to the "four corners" of the application and the statement in support of the claim. *Cf. EF v. Derwinski*, 1 Vet.App. 324, 326 (1991) (holding that VA's duty to give a liberal reading to an appeal of an RO decision applies to "all documents or oral testimony submitted prior to the B[oard] decision"). While it is not clear in the record that there were any other submissions by the appellant in connection with his 1986 application, the Board's articulation of a "four corners" standard for reviewing the appellant's pleadings is overly formal in a system where the Secretary must take a sympathetic view of an appellant's pleadings to determine whether a claim has been made.

In summary, a sympathetic reading of the appellant's pleadings cannot be based on a standard that requires legal sophistication beyond that which can be expected of a lay claimant and must consider whether the appellant's submissions, considered in toto, have articulated a claim. In this case, it is premature for us to determine whether the Board's finding was clearly erroneous because

its denial was based on the application of overly strict requirements that were inconsistent with the Secretary's duty to sympathetically read pro se pleadings. Although we need not formulate a specific standard at this time, we note that the duty to sympathetically read must be based on reasonable expectations of a pro se claimant and the Secretary. It is the pro se claimant who knows what symptoms he is experiencing that are causing him disability, *see Cintron v. West*, 13 Vet.App. 251, 259 (1999) ("Certainly, the RO had no obligation to read the mind[] of the veteran . . . ."), and may assert potential causes of the disability even if he is not competent to make a medical diagnosis, *see Espiritu v. Derwinski*, 2 Vet.App. 492, 494 (1992) (holding that lay person is not competent to offer evidence that requires medical knowledge). On the other hand, it is the Secretary who knows the provisions of title 38 and can evaluate whether there is potential under the law to compensate an averred disability based on a sympathetic reading of the material in a pro se submission.

On remand, the Secretary must consider whether the May 8, 1986, application and the appellant's submissions in support of that application raised a claim for benefits under section 1151 based on a sympathetic reading of those documents that does not require conformance with legal pleading requirements or intent to seek benefits under section 1151 explicitly. In addition, such consideration must be undertaken in accordance with regulations, law, and provisions in the VA Adjudication Procedure Manual that may be applicable to his 1986 filings, *see*, *e.g.*, 38 C.F.R. §§ 3.151 (1985 & 2005) ("claim . . . for pension may be considered to be claim for compensation"); 3.155 (1985 & 2005) (discussing informal claim); VA Adjudication Procedure Manual (M21-1), para. 21.01(a) (1983-1990) ("VA Form 21-526, Veterans Application for Compensation or Pension") (VA to consider "VA Form 21-526 properly completed as to items 1 through 40 and signed by the veteran in item 42" as "a claim for either disability compensation or pension, or both, depending upon the manner of preparation and intent of the claimant, as provided below"); M21-1, Part III, para. 2.02(a) (2005) (essentially same as above but without reference to item numbers on Form 21-526); M21-1, para. 21.01(d) (1983-1990) ("Combined Claim for Compensation and Pension") ("If the information specified" in both subparagraphs b (regarding claims for compensation) and c (regarding claim for pension) above is furnished, VA is to consider it "a claim for both benefits," and "[i]f there is any doubt as to which benefits is sought," VA is to adjudicate "both phases of the claim"); M21-1, Part III, para. 2.02(d) (2005) (essentially same).

If the Board concludes that such a claim was raised, it must decide whether that claim was ever adjudicated or whether it was still pending at the time of the April 15, 1992, correspondence from the veteran. Based on its factual findings, the Board must address whether the appellant is entitled to an effective date earlier than April 15, 1992, for the grant of benefits under section 1151.

## IV. CONCLUSION

Accordingly, the December 12, 2003, Board decision is VACATED and the matter is REMANDED for further proceedings consistent with this opinion.