*316 LANCE, Judge:
The appellant, veteran Leonard Beraud, appeals through counsel a December 15, 2010, decision of the Board of Veterans’ Appeals (Board) that, in pertinent part, denied entitlement to an effective date pri- or to August 27, 2004, for the grant of service connection for migraine headaches due to head trauma over the right eye, including whether there was clear and unmistakable error (CUE) in a November 1985 rating decision. The Board also remanded the issue of entitlement to a total disability rating based on individual unem-ployability. The Court lacks jurisdiction over this matter, and it will not be addressed further. See 38 U.S.C. §§ 7252(a), 7266(a); Howard v. Gober, 220 F.3d 1341, 1344 (Fed.Cir.2000). As any pending, unadjudicated claims arising under 38 C.F.R. § 3.156(b) from the submission of new and material evidence after the November 1985 rating decision were terminated by a final February 1990 rating decision, and because the Board properly determined that Mr. Beraud’s assertions of error in the November 1985 rating decision do not rise to the level of CUE, the Court will affirm the Board’s decision.
I. FACTS
Mr. Beraud served on active duty in the U.S. Navy from July 25, 1974, to July 6, 1977, and served in the U.S. Naval Reserve until May 3, 1988. Record (R.) at 173, 761. On November 3, 1975, while serving on the U.S.S. John F. Kennedy, he was struck in the head, resulting in a laceration above his right eye that required sutures. R. at 1654, 1800-01. A June 1, 1977, separation examination reported a normal clinical evaluation for the head and for neurologic conditions but noted a scar above Mr. Beraud’s right eyebrow. R. at 1815.
In March 1985, Mr. Beraud submitted a claim seeking entitlement to service connection for headaches. R. at 1922-25. A March 19, 1985, VA medical certificate notes that he complained of headaches and stated that he had suffered from them since 1981. R. at 1895. Similarly, in an April 14, 1985, self-report of medical history given as part of a reenlistment examination, Mr. Beraud complained of frequent or severe headaches “since 1981 following [a] duty accident [in] 1981.” R. at 1825.
The New Orleans, Louisiana, VA regional office (RO) mailed a letter to Mr. Beraud on November 12, 1985, requesting additional information. R. at 1871. Specifically, the RO stated:
We are having difficult in locating your service medicals. Since your discharge from service please give us the name [and] complete mailing address of any reserve units you have been assigned to. It may expedite your claim if you know where your records are located to contact that facility personally [and] have them forward your Medical records. Please reply as soon as possible, within 30 days.
R. at 1871. Additional boilerplate in the letter instructed Mr. Beraud to submit any new evidence within 60 days. Id.
On November 29, 1985, the RO issued a decision denying Mr. Beraud’s claim. R. at 1870. The RO mailed notice of the decision to him on December 9, 1985, and informed him that he could submit new evidence and could appeal the decision to the Board. R. at 1867-68. Later that same month, Mr. Beraud submitted a response to the November 12, 1985, letter, stating that his medical records were located at the Naval Reserve Readiness Center in New Orleans. R. at 1865. Mr. Beraud did not file a Notice of Disagreement (NOD) with the November 1985 RO decision.
*317 Subsequently, in November 1988, the RO issued a decision that granted service connection for Mr. Beraud’s right eyebrow scar and denied entitlement to service connection for blurred vision. R. at 1861-62. Mr. Beraud did not appeal that decision; however, in December 1989, he submitted a request, in part, to reopen his headache claim. R. at 1849. In February 1990,[1] the RO reopened his headache claim but denied it on the merits. R. at 1858. The RO notified Mr. Beraud of its decision in March 1990, and he did not file an appeal. R. at 1852.
In 1992 and 2001, Mr. Beraud submitted additional requests to reopen his headache claim. R. at 1799, 1847. In both instances, the RO determined that he had not submitted new and material evidence and denied his requests. R. at 1704-07; 1805-06. On August 27, 2004, Mr. Beraud submitted a request for an increased rating for his right eyebrow scar. R. at 1699. He underwent a VA compensation and pension examination in November 2004, and the examiner opined that it was as likely as not that his headaches were related to his 1975 in-service injury. R. at 1654-56. In a December 13, 2004, decision, the RO awarded service connection for headaches, evaluated as 50% disabling. R. at 1651-58. Mr. Beraud filed an NOD in January 2005, R. at 1628, and he perfected his appeal to the Board in August 2005, asserting that the effective date for his headaches “should be dated back to the first time that [he] filed,” R. at 1491. In addition to this challenge to the proper effective date, Mr. Beraud also filed a motion in November 2006 that asserted CUE in the November 1985 RO decision. R. at 1244.
On December 15, 2010, following additional development, the Board issued the decision here on appeal. R. at 2-20. In it, the Board determined that both the November 1985 and February 1990 RO decisions were final, and it held that Mr. Ber-aud’s contentions did not rise to the level of CUE. R. at 12-14. Accordingly, the Board denied entitlement to an effective date prior to August 27, 2004, for the grant of service connection for migraine headaches. R. at 17.
II. THE PARTIES’ ARGUMENTS
Mr. Beraud first argues that the Board clearly erred when it determined that he was not entitled to an effective date prior to August 27, 2004, for the grant of service connection for migraine headaches. Appellant’s Brief (Br.) at 6-8. Specifically, he contends that his December 1985 letter to the RO constituted new and material evidence that, pursuant to 38 C.F.R. § 3.156(b),[2] gave rise to a pending and unadjudicated claim. Id. In support of this argument, Mr. Beraud cites the Court’s decision in Young v. Shinseki, 22 Vet.App. 461, 468-69 (2009), for the proposition that his December 1985 letter rendered the November 1985 rating decision not final. Appellant’s Br. at 8 (citing Muehl v. West, 13 Vet.App. 159 (1999)). The Secretary responds that the November 1985 decision is final, as Mr. Beraud failed to file an NOD with that decision. Secretary’s Br. at 5-8. He also contends that the appellant’s December 1985 letter did not constitute new and material evidence and so did not give rise to a pend *318 ing, unadjudicated claim pursuant to § 3.156(b) and Young. Secretary’s Br. at 5-8. In the alternative, he argues that, even assuming that the March 1985 claim remained pending, that pendency was terminated by the unappealed February 1990 rating decision. Id. at 8.
Next, Mr. Beraud contends that the Board erred when it determined that the November 1985 rating decision was not the product of CUE. Appellant’s Br. at 8-14. In particular, he asserts that the correct facts were constructively in the record but were not before the adjudicator, as the RO failed to obtain his VA outpatient medical records and service records from his Reserve service. Id. (citing Bell v. Derwinski, 2 Vet.App. 611 (1992)). The Secretary responds that the constructive possession doctrine articulated in Bell is not applicable, as the November 1985 rating decision predates the Court’s decision in that case. Secretary’s Br. at 11 (citing Lynch v. Gober, 11 Vet.App. 22, 29 (1997), vacated and remanded on other grounds sub nom. Lynch v. West, 178 F.3d 1312 (Fed.Cir.1998) (table), reinstated by Lynch v. West, 12 Vet.App. 391 (1999) (per curiam order)). He also argues that, per this Court’s decision in Damrel v. Brown, 6 Vet.App. 242, 243 (1994), constructive notice obligations for VA do not apply to CUE claims. Id.
Finally, Mr. Beraud asserts generally that, even absent any error as to the merits of its determinations, the Board failed to provide an adequate statement of reasons or bases for its decision. Appellant’s Br. at 8-11.
III. ANALYSIS

A. Pending, Unadjudicated Claim

A “pending claim” is “[a]n application, formal or informal, which has not been finally adjudicated.” 38 C.F.R. § 3.160(c) (1985) (unchanged in 2012 version). “Consistent with this regulation ..., this Court has held that a claim remains pending— even for years — if the Secretary fails to act on a claim before him.” Ingram v. Nicholson, 21 Vet.App. 232, 240 (2007). Thus, for example, when a claimant submits new and material evidence within the one-year appeal period after a rating decision is issued, the RO must readjudicate the claim, and failure to do so may render the claim pending and unadjudicated. Young, 22 Vet.App. at 468; 38 C.F.R. § 3.156(b).
However, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has also held that “a subsequent final adjudication of a claim which is identical to a pending claim that had not been finally adjudicated terminates the pending status of the earlier claim.” Williams v. Peake, 521 F.3d 1348, 1351 (Fed.Cir.2008). This “later disposition, denying the claim on its merits, also decides that the earlier identical claim must fail.” Id. Put another way, “a reasonably raised claim remains pending until there is ... an explicit adjudication of a subsequent ‘claim’ for the same disability.” Ingram, 21 Vet.App. at 243. “[W]hen the substance of a later-filed claim is addressed in an RO decision, the claimant can infer that the earlier-filed claim based on the same disability has also been adjudicated.” Charles v. Shinseki, 587 F.3d 1318, 1323 (Fed.Cir.2009) (citing Williams, 521 F.3d at 1350).
This principle holds true where, as here, the subsequent claim is a request to reopen that is reopened and adjudicated on the merits.[3] Juarez v. Peake, 21 Vet. *319 App. 537, 542 (2008) (“Both [the] original claim and [the] claim to reopen are claims for compensation for [the same] condition — an asserted service-connected disability.”); cf. Charles, 587 F.3d at 1323 (explaining that “whether a subsequent claim that is abandoned renders an earlier pending claim also abandoned” is a “markedly different” situation than a case where “a later-filed claim is adjudicated on the merits”). Further, a claimant whose pending claim is decided in this manner may still challenge VA’s failure to adjudicate the earlier claim by appealing the subsequent decision. Williams, 521 F.3d at 1351 (“When notice is given of the final adjudication of the later claim, the veteran’s right to appeal the disallowance exists. When the veteran prevails on such an appeal, the effective date of his relief relates back to the date of the filing of his original claim.”); see also Juarez, 21 Vet.App. at 542 (“Where the reason for denying the benefit is invalid, the proper remedy is a timely appeal.”).
 In light of this clear precedent, the Court holds that if a claim is pending by virtue of the submission of new and material evidence under 38 C.F.R. § 3.156(b), the subsequent final adjudication on the merits of the same claim terminates the pending claim. See id. Ingram, 21 Vet.App. at 243. To hold otherwise would not only contradict the precedent set by this Court and the Federal Circuit, it would also call into question the finality of uncountable rating decisions. Moreover, this holding does not deprive claimants of the opportunity to challenge VA’s procedural failures; it merely restricts the method of doing so to a challenge to the subsequent adjudication.
This holding is consistent with pri- or decisions of this Court and the Federal Circuit. Although the appellant cites Young and Muehl, both supra, in support of his arguments, neither case involved a subsequent final denial on the merits. Rather, they stand for the proposition that the submission of new and material evidence within the one-year appeal period may give rise to a pending, unadjudicated claim, which the Court does not dispute.
In Young, for example, the appellant submitted additional evidence in June 1997, less than one year after a September 1996 RO decision denied entitlement to an increased rating for post-traumatic stress disorder (PTSD). 22 Vet.App. at 467. The RO, rather than making a determination as to whether that evidence was new and material, interpreted it as a new request for an increased rating, which it denied in a December 1997 decision. R. at 464. Mr. Young was later awarded an increased rating for his PTSD in a March 2003 rating decision, effective June 1997— the date he submitted the new evidence. Id. at 464. Mr. Young appealed the effective date determination. Id. The Court remanded, holding that if VA determined that the June 1997 evidence was new and material, Mr. Young could be entitled to an effective date of the date of his original claim. Id. at 469. Critically, unlike the present case, there was no intervening, final decision on the merits between the September 1996 decision and the March 2003 decision, as Mr. Young had continuously pursued an appeal of the December 1997 decision. Similarly, the Court’s holding also comports with the Federal Circuit’s decision in Bond v. Shinseki, 659 F.3d 1362 (Fed.Cir.2011), which, like Young, involved a claimant’s ability to use *320 § 3.156(b) to challenge the proper effective date after a subsequent grant of a claim when there was no intervening final decision on the merits. Indeed, the Federal Circuit favorably cited Young in that decision. 659 F.3d at 1368-69.
Applying the above holding to the facts of this case, Mr. Beraud’s arguments must fail. Whether or not the December 1985 letter constituted new and material evidence sufficient to give rise to a pending, unadjudicated claim, the February 1990 decision reopened and readjudicated his headaches claim and denied it on the merits.[4] R. at 1853. The Board determined that the February 1990 RO decision was final,[5] and the Court is not persuaded that this determination is clearly erroneous. See Hilkert v. West, 12 Vet.App. 145, 151 (1999) (en banc) (“An appellant bears the burden of persuasion on appeals to this Court.”); aff'd, per curiam, 232 F.3d 908 (Fed.Cir.2000) (table). The Court thus holds that any pending, unadjudicated claim was terminated by the February 1990 RO decision and, accordingly, that the Board did not err by failing to award an earlier effective date on this basis. Mr. Beraud had the opportunity to directly appeal the February 1990 decision, at which time he could have challenged VA’s actions prior to that decision. He did not do so, and he may not now resurrect a claim terminated by that subsequent final adjudication.[6] Mr. Beraud remains free to challenge the February 1990 rating decision on the basis of CUE by filing an appropriate request with the RO. See Jarrell v. Nicholson, 20 Vet.App. 326, 334 (2006) (en banc) (the Court lacks jurisdiction to address a CUE motion in the first instance).

B. CUE in the November 1985 Rating Decision

A CUE motion is a collateral attack on a final RO or Board decision. *321 Disabled Am. Veterans v. Gober, 234 F.3d 682, 696-98 (Fed.Cir.2000). To establish CUE in a final RO decision, a claimant must show that (1) either the facts known at the time were not before the adjudicator or that the law then in effect was incorrectly applied; and (2) had the error not been made, the outcome would have been manifestly different. Disabled American Veterans v. Gober, 234 F.3d 682, 696-98 (Fed.Cir.2000); Hillyard v. Shinseki, 24 Vet.App. 343, 349 (2011). “[T]he alleged error must be ‘undebatable,’ not merely ‘a disagreement as to how the facts were weighed or evaluated.’ ” Id. (quoting Russell v. Principi, 3 Vet.App. 310, 313-14 (1992) (en banc)). The Court’s review of the Board’s determination on the existence of CUE is limited to whether that conclusion was “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.” 38 U.S.C. § 7261(a)(3); Hillyard, 24 Vet.App. at 349; Russell, 3 Vet.App. at 315.
The appellant’s argument that the RO’s failure to obtain his service department records constitutes CUE is unpersuasive, as a breach in the duty to assist cannot constitute CUE. Cook, 318 F.3d at 1341; Caffrey, 6 Vet.App. at 382. Similarly, although the appellant cites Bell, supra, for the proposition that his VA clinical records were constructively before the RO at the time of its November 1985 decision, this Court has clearly held that Bell does not extend retroactively to claims decided before it was handed down. Damrel v. Brown, 6 Vet.App. 242, 246 (1994). Finally, the appellant has not otherwise persuaded the Court that “the correct facts in ... the record were not before the adjudicator” or that “the statutory or regulatory provisions in existence at the time were incorrectly applied.” Hillyard, 24 Vet.App. at 349; see Hilkert, supra. The Court thus holds that the Board’s determination that the November 1985 rating decision was not the product of CUE was not “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” 38 U.S.C. § 7261(a)(3)(A).

C. Reasons or Bases

The Board is required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board’s decision, as well as to facilitate informed review in this Court. 38 U.S.C. § 7104(d)(1); Allday v. Brown, 7 Vet.App. 517, 527 (1995); Gilbert v. Derwinski, 1 Vet.App. 49, 56-57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Caluza v. Brown, 7 Vet.App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996) (table); Gabrielson v. Brown, 7 Vet.App. 36, 39-40 (1994); Gilbert, supra.
To the extent that the appellant faults the Board for failing to discuss whether his 1985 claim was pending and unadjudicated, the Board was not required to do so. As explained above, the February 1990 rating decision — which the Board found to be final — terminated the pending status of the 1985 claim at the time of that decision, see Williams, 521 F.3d at 1351. Hence, whether or not he had a pending and unadjudicated claim before the February 1990 decision is irrelevant to the Board’s decision. Similarly, to the extent that the appellant argues that the Board erred by failing to discuss VA’s purported failure to obtain his treatment records, those records were not constructively part *322 of the record as a matter of law, and the Board did not err by failing to discuss this issue. See Damrel, supra. The Court therefore holds that the Board provided an adequate statement of reasons or bases for its decision.
IV. CONCLUSION
Regardless of whether Mr. Beraud’s December 1985 letter gave rise to a pending, unadjudicated claim under Young and § 3.156(b), any error on the part of the RO in failing to adjudicate such a claim was cured when it issued the February 1990 rating decision. Mr. Beraud had the opportunity to challenge any perceived procedural defects by filing an NOD with that decision, but, for whatever reason, he chose not to do so, and the Court will not now permit him to reargue the merits of that final decision. He remains free to file a motion with his RO asserting CUE in the February 1990 rating decision. In addition, the Board correctly determined that Mr. Beraud’s assertions of error in the November 1985 rating decision do not rise to the level of CUE, and it provided an adequate statement of reasons or bases for its decision.
Accordingly, the Board’s December 15, 2010, decision is AFFIRMED.
LANCE, Judge, filed the opinion of the Court.
BARTLEY, Judge, filed a dissenting opinion.

. The Board, in its December 2010 decision, refers to this as a "March 1990” decision, due to the fact that the RO did not mail the decision to Mr. Beraud until that time. See R. at 14, 1852. For the sake of clarity, the Court will use the February 1990 date.

. At the time of the 1985 RO decision, this regulation was codified at 38 C.F.R. § 3.156(a). Compare 38 C.F.R. § 3.156(a) (1985), with 38 C.F.R. § 3.156(b) (2012).

. Indeed, pursuant to Juarez, this principle holds true even when the subsequent final adjudication of the claim finds no new and material evidence has been submitted to reopen the claim. 21 Vet.App. at 542 ("Stated another way, the appellant's original claim *319 for service-connected compensation benefits, even if still pending at that time, was denied when the April 1996 RO explicitly determined that new and material evidence had not been submitted to reopen his claim.”).

. Contrary to the view taken by our dissenting colleague, the RO is presumed to have considered all the evidence of record at the time of its February 1990 decision, including the appellant’s December 1985 letter. See Gonzales v. West, 218 F.3d 1378, 1381 (Fed.Cir.2000) (”[A]bsent specific evidence indicating otherwise, all evidence contained in the record at the time of the RO’s determination of the service connection must be presumed to have been reviewed by [VA], and no further proof of such review is needed.”). To the extent that there is a question whether the RO sought the service records discussed in the December 1985 letter, any failure to do so would at most constitute a failure to fulfill the duty to assist, which, as discussed below, cannot constitute CUE. See Cook v. Principi, 318 F.3d 1334, 1341 (Fed.Cir.2002); Caffrey v. Brown, 6 Vet.App. 377, 382 (1994).

. Indeed, the Board decision explicitly states that "[t]he [February] 1990 rating decision denied service connection for headaches as they were not considered to be related to military service. The Veteran was notified of the decision and his appellate and procedural rights, but did not appeal the decision. Therefore, the decision is final.” R. at 14. In light of this specific determination, the Court is perplexed by Mr. Beraud's assertions that "[t]he finality of the February 1990 decision has never been addressed in these proceedings” and that ”[t]he Board decision of December 2010 specifically found that the 1985 RO decision was final and did not address any other claims.” Appellant’s Reply Br. at 5.

.To be clear, the Court does not suggest that the same result would necessarily follow in this case absent the intervening final decision, and our dissenting colleague is correct that, absent an intervening final decision, the Board’s failure to consider the applicability of § 3.156(b) could potentially be problematic. However, because the February 1990 decision, as noted above, is presumed to have considered all the evidence of record, its finality precludes the appellant from challenging earlier procedural defects at this time. See Cook, 318 F.3d at 1339 ("The purpose of the rule of finality is to preclude repetitive and belated readjudications of veterans’ benefits claims.’’).