# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

NO. 13-1245

FRED A. MITCHELL, APPELLANT,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided November 18, 2015)

*Sean A. Kendall* of Boulder, Colorado, and *Michael E. Wildhaber* of Washington, D.C., were on the brief, for the appellant.

*Will A. Gunn*, General Counsel; *Mary Ann Flynn*, Assistant General Counsel; *Nisha C. Hall*, Deputy Assistant General Counsel; and *Bryan W. Thompson*, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, PIETSCH, and BARTLEY *Judges*.

BARTLEY, *Judge*, filed the opinion of the Court. KASOLD, *Judge*, filed a dissenting opinion.

BARTLEY, *Judge*: Veteran Fred. A. Mitchell appealed through counsel a January 7, 2013, Board of Veterans' Appeals (Board) decision that denied an effective date earlier than February 22, 2007, for the grant of service connection for a bilateral hearing loss disability. Record (R.) at 3-13.[1] On September 4, 2014, this Court affirmed the Board in a single-judge memorandum decision, *Mitchell v. McDonald*, No. 13-1245, 2014 U.S. App. Vet. Claims LEXIS 1521 (Sept. 4, 2014) (mem. dec.), and the veteran appealed to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit).

---

[1] The Board also denied an effective date earlier than February 22, 2007, for the grant of service connection for tinnitus. R. at 13. Mr. Mitchell expressly declined to challenge that portion of the Board decision. Appellant's Brief at 1 n.1. Accordingly, the appeal as to that issue will be dismissed. *See Pederson v. McDonald*, 27 Vet.App. 276, 281-86 (2015) (en banc) (declining to review and dismissing the appeal of an issue not argued before the Court); *Cacciola v. Gibson*, 27 Vet.App. 45, 48 (2014) (same).

On June 23, 2015, the Federal Circuit vacated this Court's judgment and remanded the case for this Court to reconsider Mr. Mitchell's claim in light of 38 C.F.R. § 3.156(b) and its recent decision in *Beraud v. McDonald*, 766 F.3d 1402 (Fed. Cir. 2014). *Mitchell v. McDonald*, No. 2015-7032 (Fed. Cir. June 23, 2015) (unpublished per curiam order). This matter was referred to a panel of the Court to apply § 3.156(b) and the Federal Circuit's *Beraud* decision to the facts of this case. Because we find no material difference between the relevant facts in *Beraud* and Mr. Mitchell's case, the portion of the Board's January 2013 decision denying an earlier effective date for the award of service connection for hearing loss will be set aside and the matter remanded for further adjudication consistent with this decision.

## I.  FACTS & PROCEDURAL HISTORY

Mr. Mitchell served on active duty in the U.S. Navy from January 1970 to January 1971. R. at 368. In August 1972, he sought service connection for hearing loss, allegedly resulting from naval gun noise exposure. R. at 364-67; *see* R. at 358-59 (September 1973 statement in support of claim). In October 1973, the VA regional office (RO) denied service connection for hearing loss, finding, inter alia, that "current existence of a hearing loss has not been established." R. at 356-57.

Although Mr. Mitchell did not appeal the RO decision, he submitted to the RO in December 1973, two months after its denial, a private audiogram dated January 1973,[2] which showed current hearing loss.[3] R. at 351-52; *see* R. at 8-9. There is no indication in the record that the RO addressed or otherwise responded to this evidence from the date the veteran submitted it to the present.

In December 1999, the veteran sought to reopen his claim for service connection for hearing loss (R. at 343-44), but the RO denied his request (R. at 300). The documents listed under

---

[2] To avoid confusion, the Court will refer to this document as the "December 1973" audiogram.

[3] The audiogram shows the following left ear/right ear hearing thresholds in decibels (dB) for specified frequencies (in Hertz (Hz)): 5 dB/10 dB at 500 Hz; 60 dB/25 dB at 1000 Hz; 60dB /60 dB at 2000 Hz; and 70 dB /85 dB at 4000 Hz. "[T]he threshold for normal hearing is from 0 to 25 dB, and any higher threshold levels indicate some degree of hearing loss." *Hensley v. Brown*, 5 Vet.App. 155, 157 (1993); *see also* 38 C.F.R. § 3.385 (1991) ("For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 [Hz] is 40 [dB] or greater."); Determination of Service Connection for Impaired Hearing, 55 Fed. Reg. 12,348 (Apr. 3, 1990) ("The pure tone thresholds [set forth in § 3.385] are not significantly changed from the procedural guidelines for determining normal hearing which VA rating boards have used for many years.").

"Evidence" were the veteran's service medical records (SMRs), a July 2003 VA duty-to-assist letter, and January and February 2003 statements in support of claim from the veteran and his wife. R. at 301. The December 1973 audiogram was not listed. The veteran did not appeal the RO's decision, and it became final.

In February 2007, Mr. Mitchell once more sought to reopen his claim for service connection for hearing loss. R. at 291. In July 2007, the RO again denied his request. R. at 272-77. The documents listed under "Evidence" were the veteran's SMRs, the veteran's DD 214, a February 2007 statement from the veteran, and an April 2007 letter from VA. R. at 275. The December 1973 audiogram was not listed.

In July 2008, the RO received medical opinions explicitly linking the veteran's hearing loss to his service. R. at 109-11. The RO immediately reopened the claim, granted him entitlement to disability benefits for bilateral hearing loss, and assigned his disorder a 100% evaluation from February 22, 2007, the date VA received the most recent request to reopen the claim. R. at 79-90. Mr. Mitchell filed a Notice of Disagreement (NOD) as to the effective date assigned (R. at 71) and, following the RO's continuation of its decision (R. at 50-64), appealed to the Board (R. at 48-49).

During a March 2012 Board hearing, the veteran argued that the effective date for the award of service connection for hearing loss should be August 16, 1973, the date of his initial claim, because the RO never addressed the December 1973 audiogram submitted two months after the RO first denied the claim based on a purported lack of a hearing loss disability. *See* R. at 16-22.

In a January 2013 decision, the Board rejected the veteran's argument and denied an effective date earlier than February 22, 2007, for the grant of service connection for bilateral hearing loss. R. at 3-13. Specifically, the Board found that the October 1973 RO decision became final when the RO denied the substance of the hearing loss claim in September 2003 and the veteran failed to appeal that decision. R. at 6, 10.

## II. ANALYSIS

As a general rule, the effective date of an evaluation and award of VA disability compensation, based on an original claim or a request to reopen a claim, is the date of receipt of the claim or request or the date entitlement arose, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R.

§ 3.400(b)(2)(i), (r) (2015); *see Sutton v. Nicholson*, 20 Vet.App. 419, 422 (2006). Subject to certain exceptions, it is also the rule that, when an RO properly notifies a claimant as to its decision on a claim, that decision becomes final if an appeal is not properly perfected. 38 C.F.R. § 20.1103 (2015); *see* 38 U.S.C. § 7105(c) ("If no [NOD] is filed in accordance with this chapter within the prescribed period, the action or determination shall become final and the claim will not thereafter be reopened or allowed, except as may otherwise be provided by regulations not inconsistent with this title."); *see also Sutton*, 20 Vet.App. at 425 ("In general, if a claim is denied by an RO, and the claimant does not file an NOD within one year, then [the] RO decision becomes final and unappealable by operation of law."); *cf., e.g.*, *Shipley v. Shinseki*, 24 Vet.App. 458, 461 (2011) ("The RO's failure to furnish [a Statement of the Case] upon the proper filing of an NOD prevents the underlying RO decision from becoming final.").

However, VA effective date regulations provide a special rule in certain circumstances when new and material evidence is involved.[4] VA has stated that, when new and material evidence other than service department records is received within an appeal period or prior to an appellate decision, "[t]he effective date will be as though the former decision had not been rendered." 38 C.F.R. § 3.400(q).

In a related provision, the Secretary further explained this rule:

> Pending claim.—New and material evidence received prior to the expiration of the appeal period, or prior to the appellate decision if a timely appeal has been filed (including evidence received prior to an appellate decision and referred to the agency of original jurisdiction by the Board . . . without consideration in that decision in accordance with the provisions of § 20.1304(b)(1)[5] of this chapter), will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period.

38 C.F.R. § 3.156(b).

---

[4] "New evidence means existing evidence not previously submitted to agency decisionmakers" and "[m]aterial evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim." 38 C.F.R. § 3.156(a) (2015). Evidence is not new and material if it is either "cumulative" or "redundant" when compared to evidence already in the record. *Id.*

[5] Section 20.1304 includes rules that come into effect when an appellant asks to change his representative, requests a personal hearing, or submits evidence after his appeal is certified and forwarded to the Board. It played no part in this case.

"Section 3.156(b) is intended to be a veteran-friendly provision that allows for the assignment of an effective date of the date of the original claim when certain requirements are met." *Young v. Shinseki*, 22 Vet.App. 461, 469 (2009) (citing General Evidence Requirements, Effective Dates, Revision of Decisions, and Protection of Existing Ratings, 72 Fed. Reg. 28,770 , 28,778 (May 22, 2007)). Under § 3.156(b), when new evidence is submitted within an RO decision's appeal period, the RO must consider it and prepare a Supplemental Statement of the Case; failure to do so prevents the RO decision from becoming final. *Charles v. Shinseki*, 587 F.3d 1318, 1323 (Fed. Cir. 2009).

In *Bond v. Shinseki*, the Federal Circuit held that § 3.156(b) requires VA to "assess any evidence submitted during the relevant period and make a determination as to whether it constitutes new and material evidence relating to the old claim." 659 F.3d 1362, 1367 (Fed. Cir. 2011). An RO had granted Mr. Bond a less than total disability evaluation in a May 1997 decision. *Id.* at 1363. Within one year of that decision, he submitted evidence, a request for a higher evaluation, and a timely NOD. *Id.* The RO treated this submission as a new claim for increase and denied it, and Mr. Bond perfected an appeal to the Board. *Id.* While this appeal was pending, Mr. Bond submitted further evidence that resulted in a higher disability evaluation, effective July 1999. *Id.* at 1364. On direct appeal of the May 1997 RO decision, he argued that the effective date for this higher evaluation should be the date of his original claim, October 1996, because the RO never addressed the evidence submitted within one year after its May 1997 decision. The Board determined that Mr. Bond was not entitled to the earlier effective date he requested, and this Court affirmed. *Id.* at 1364-65.

On appeal, the Federal Circuit set this Court's decision aside and remanded on the basis of § 3.156(b). "To comply with the directive of § 3.156(b) that new and material evidence be treated as having been filed in connection with the pending claim," the Federal Circuit explained, "VA must evaluate submissions received during the relevant period and determine whether they contain new evidence relevant to a pending claim, whether or not the relevant submission might otherwise support a new claim [for increase]." *Id.* at 1369.

The Federal Circuit considered § 3.156(b) again in *Beraud*, a case that bears many factual and procedural similarities to Mr. Mitchell's. Mr. Beraud sought service connection for a headache disorder, which the RO denied, having advised the veteran that it was having difficulty locating his

reserve SMRs. *Beraud*, 766 F.3d at 1403. He did not file an NOD as to this decision, but he submitted a December 1985 letter less than one month later indicating the location of his reserve SMRs; the RO never responded to this letter. *Id.*

In the ensuing years, Mr. Beraud submitted several requests to reopen, but the RO denied them without referencing his letter or the SMRs that were the subject thereof. *Id.* at 1403-04. The RO granted Mr. Beraud's fourth request to reopen, awarded service connection, and assigned an effective date corresponding to VA's receipt of the most recent request to reopen. In doing so, the RO did not advert to his letter or the records it referred to. *Id.* at 1404.

Mr. Beraud disagreed with the effective date assigned, arguing that, because the RO never addressed the December 1985 document submitted within one year of its initial denial, the effective date should have been the date VA received his initial claim for service connection for headaches. *Id.* The Board rejected this argument, finding that the RO's original decision as to his claim and the RO's later decision denying his first request to reopen the identical claim were final, and that the decisions denying his next two requests to reopen were likewise final. *Id.* Because no other communication indicating an intent to seek service connection for a headache disorder was received until his most recent request to reopen, the Board concluded that Mr. Beraud could not obtain an effective date earlier than the date VA received his ultimate, successful request to reopen. *Id.* This Court affirmed the Board decision. *Beraud v. Shinseki*, 26 Vet.App. 313 (2013).

On appeal, the Federal Circuit reversed this Court's judgment, holding that, "[b]ecause the VA never determined whether the medical records [Mr.] Beraud referred to in his December 1985 letter constituted new and material evidence, as required by § 3.156(b), his 1985 claim remains pending." *Beraud*, 766 F.3d at 1407. In reaching this conclusion, the Federal Circuit found that *Bond*, discussed *supra*, controlled. *Id.* at 1405. The court distinguished its decision in *Williams v. Peake*, 521 F.3d 1348 (Fed. Cir. 2008)—which held that a subsequent final adjudication of a claim which is identical to a pending claim that has not been finally adjudicated terminates the pending status of the earlier claim—by noting that *Williams* did not involve VA's obligations under § 3.156(b) or the submission of new evidence within the one-year appeal period following an RO decision. *Beraud*, 766 F.3d at 1405-06. Furthermore, the Federal Circuit observed that when *Williams* "concluded that a later final determination of which a veteran received notice could cure

6

the VA's failure to provide notice of an earlier determination, thereby allowing the earlier claim to become final," it "expressly noted that no statute or regulation required a contrary conclusion." *Id.* at 1406. In contrast to the situation in *Williams*, where § 3.156(b) did not apply, in this case § 3.156(b) applies and places VA "under an express regulatory obligation to make a determination regarding the character of the new evidence . . . submitted." *Id.* Thus, the Federal Circuit "decline[d] to extend *Williams*" to the circumstances in *Beraud*. *Id.* at 1406.

The Federal Circuit explicitly rejected the Government's assertion that the initial RO denial of service connection was rendered final because it could be presumed that VA had considered Mr. Beraud's newly submitted evidence in the first decision rendered after that evidence was submitted. Although recognizing that this general presumption applies "where the record before the VA is complete and there is no statutory or regulatory obligation that would be thwarted by application of the presumption," the court stated that it does not apply where there is "no indication that the VA made its required determination under § 3.156(b)." *Id.* at 1407. "To apply the presumption the government urges," the Federal Circuit reasoned in *Beraud*, "would effectively insulate the VA's errors from review whenever it fails to fulfill an obligation, but leaves no firm trace of its dereliction in the record," a practice inconsistent with the tenets of § 3.156(b). Therefore, the Federal Circuit "reaffirm[ed] that, under § 3.156(b), the VA must provide a determination . . . directly responsive to the new submission and . . . , until it does so, the claim at issue remains open." *Id.* at 1407.

With respect to Mr. Mitchell's case, we conclude that *Beraud* controls. There is no dispute that Mr. Mitchell submitted additional evidence pertaining to his hearing loss claim within one year of the October 1973 RO decision that denied service connection for hearing loss. Under § 3.156(b), when a claimant submits evidence within the appeal period, the claim remains open until VA provides a determination that explicitly addresses this new submission. *Beraud*, 766 F.3d at 1407. Here, VA never issued a decision "directly responsive" to Mr. Mitchell's December 1973 submission. *Id.* His August 1972 claim, therefore, "remains open." *Id.*; *see Bond*, 659 F.3d at 1369; *Young*, 22 Vet.App. at 466; *see also Muehl v. West*, 13 Vet.App. 159, 161-62 (1999).

Before delving into the specifics of our colleague's dissent, we must respond to a rhetorical device he employs. He attempts to minimize the importance of a § 3.156(b) decision by labeling it "interlocutory." Section 3.156(b) is far more powerful than the dissent acknowledges—it suspends

finality in the decision to which it applies until VA takes the action required. That is an important right that the Secretary has given veterans via regulation. *See Beraud*, 766 F.3d at 1405 (disagreeing with the Secretary's contention that VA's failure to make a § 3.156(b) determination does not vitiate the finality of a decision). The required agency decision is not "interlocutory" in the manner that our colleague insinuates; it is a necessary step that the agency must take before a case can proceed or reach finality. *Beraud* instructs that the right created by § 3.156(b) does not evaporate when the agency issues an intervening decision that resolves the claim in question without addressing the evidence that gave rise to the agency's § 3.156(b) responsibilities.[6]

Turning to our dissenting colleague's substantive arguments, he first contends that "[t]he only requirement imposed by § 3.156(b) is that the Board must consider any new and material information during the administrative-appeals process as having been filed with the underlying claim." *Post* at 14. We agree that the necessary starting point of our analysis is the language of § 3.156(b) itself. But we do not agree with the dissent's implication that we are free to reinterpret § 3.156(b) as though *Beraud* and *Bond* had not been decided. *See Taylor v. Principi*, 17 Vet.App. 148, 149 (2003) (per curiam order) (rejecting arguments contrary to binding Federal Circuit precedent interpreting a regulation). To the extent previous decisions of this Court or the Federal Circuit read the mandates of § 3.156(b) differently than the dissent, we note simply that we are not at liberty to disregard those decisions. *See Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992). Although the dissent is critical of our citations to *Young*, *Charles*, and *Bond*, asserting that we ignore the fact that those cases did not involve claims in which final decisions had been rendered, *post* at 15-16, the dissent misses the point of the citations. *Young*, *Charles*, and *Bond* do not necessarily dictate the outcome in this case—§ 3.156(b) and *Beraud* do—but they are binding precedents that explain the prevailing interpretation of the regulatory text at issue in this case and are undeniably relevant.

Our dissenting colleague's main disagreement is with *Beraud*, which he acknowledges held that, in accordance with § 3.156(b), an underlying claim remains pending, despite the issuance of

---

[6] Our colleague begins his analysis of *Beraud* with a quotation from a U.S. Supreme Court decision written by Chief Justice John Marshall. *See post* at 16-17 (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399 (1821)). We note that Chief Justice Marshall crafted the statement the dissent quotes in response to counsel's attempt to use "some dicta of the Court, in the case of *Marbury v. Madison*" to support his argument. *Cohens*, 19 U.S. at 399. Here, we focus our analysis on the controlling precedential statements the Federal Circuit made in *Beraud*.

a final decision, when the RO does not respond to new and material evidence submitted during the appeal period. *Post* at 16. Notwithstanding the procedural parallel between the two cases, the dissent thinks the crucial distinguishing fact is that, in *Beraud*, the evidence identified by the claimant within the one-year appeal period was not obtained, whereas, in Mr. Mitchell's case, the December 1973 private audiogram showing hearing loss was received within the one-year appeal period. *Post* at 17-18.

Yet, the fact that the records referenced in Mr. Beraud's December 1984 letter were never obtained was not the critical error. The Federal Circuit was absolutely clear that the gravamen of VA's error was that it failed to discharge its duty under § 3.156(b) to "provide a determination that is directly responsive to the new submission." *Beraud*, 766 F.3d at 1407; *see also id.* ("Because the VA *never determined whether the medical records Beraud referred to in his December 1985 letter constituted new and material evidence*, as required by § 3.156(b), his 1985 claim remains pending." (emphasis added)). Our dissenting colleague reads much into the Federal Circuit's use of the word "indeed" when it wrote: "Indeed, the dissent [in the Veterans Court] noted that the medical records which the RO said it needed in 1985 'appear to be yet unobtained.'" *See post* at 18 (quoting *Beraud*, 766 F.3d at 1404). But he fails to appreciate that "indeed" is an adverb "used for emphasis, to confirm and amplify a *previous statement*," THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 970 (2d ed. 1987) (emphasis added), and that the "previous statement" being highlighted was that § 3.156(b) "requires continued pendency of a claim, even where there is a subsequent final denial, if the evidence has not been considered by the adjudicating or appellate body," *Beraud*, 766 F.3d at 1404.

That the critical VA mistake in *Beraud* was VA's failure to address the evidence submitted during the appeal period—rather than the failure to obtain it—is also apparent from the remainder of the Federal Circuit's discussion. Therein, the court explained that the general presumption that the RO considered all relevant evidence could not be indulged because "[t]o apply the presumption . . . would 'effectively insulate the VA's errors from review whenever it fails to fulfill an obligation, but leaves no firm trace of its dereliction in the record." *Beraud*, 766 F.3d at 1407 (quoting *Bond*, 659 F.3d at 1368); *see also id.* at 1406-07 ("[W]e unambiguously reject[ ] that pre-presumption in circumstances, like here, where there is no indication that the VA made its required determination

under § 3.156(b)."). Were the Federal Circuit's decision to remand in *Beraud* based on the RO's failure to obtain evidence cited during the appeal period, there would have been no need to discuss and reject the general presumption of consideration. The fact that the court did so makes plain that it was VA's failure to explicitly respond to the evidence submitted during the appeal period that violated § 3.156(b).[7]

"[C]oncluding that the fact that the information referenced by Beraud's 1985 letter had never been obtained was the material fact that resulted in the Federal Circuit's majority decision," the dissent maintains, "is the only way to explain why the Federal Circuit reached a conclusion so strikingly different from the then extant case law," namely *Cook v. Principi*, 318 F.3d 1334 (Fed. Cir. 2002) (en banc). *Post* at 18. But any purported tension between *Beraud* and *Cook* stems not from our straightforward reading of *Beraud* but from the dissent's overly rigid reading of *Cook*.

In *Cook*, the Federal Circuit overruled a previous decision and held that the existence of "grave procedural error" does not render a VA decision nonfinal. 318 F.3d at 1348. But the Federal Circuit was also careful to advise that this rule obtains "except as may otherwise be provided by regulations not inconsistent with this title.'" *Cook*, 318 F.3d at 1336 (quoting 38 U.S.C. § 7105(c)). Section 3.156(b), as interpreted by the Federal Circuit and this Court, is a regulation that provides "otherwise," and there is no indication that it is inconsistent with the balance of title 38. *Cf. generally Paralyzed Veterans of Am. v. Sec'y of Veterans Affairs*, 345 F.3d 1334 (Fed. Cir. 2003) (upholding § 3.156 as a valid exercise of VA's rulemaking authority).

Furthermore, the Federal Circuit has explained that *Cook*, which holds that there are only two ways of collaterally challenging *final* RO decisions, is not implicated when VA's contravention of a statute or regulation renders a decision nonfinal. For example, in *AG v. Peake*, the Federal Circuit held that VA's failure to notify the claimant of his right to appeal an RO decision prevented that

---

[7] We further note that, even as a general matter, the presumption that "all evidence contained in the record at the time of the RO's determination of the service connection must be presumed to have been reviewed by the [RO]" is not absolute but rebuttable by "specific evidence indicating otherwise." *Gonzales v. West*, 218 F.3d 1378, 1381 (Fed. Cir. 2000). In the present case there is specific evidence indicating that the RO never considered the December 1973 audiogram. The September 2003, June 2007, and July 2008 RO decisions, as do all rating decisions, listed the evidence considered and indubitably did not cite the December 1973 audiogram. R. at 86, 275, 301 (listing only SMRs, VA letters, and other statements from the veteran and his spouse). Given the affirmative absence of the December 1973 audiogram from the lists of evidence in these RO decisions, the Court is persuaded that, even if the general presumption in *Gonzales* were applicable here, the "specific evidence" exception would be applicable to rebut the presumption.

10

decision from becoming final. 536 F.3d 1306, 1310 (Fed. Cir. 2008) (citing 38 U.S.C. § 5104 and 38 C.F.R. § 3.103(b) (both mandating that VA must provide to a claimant notice of any decision affecting the provision of benefits or granting relief, accompanied by an explanation of the procedures to initiate an appeal)). "[T]he instant case does not implicate *Cook v. Principi*, which discussed the two exceptions to the rule that final determinations cannot be challenged," the Federal Circuit concluded, because "[h]ere, the challenged decision never became final, and thus AG need not [have] prove[d] that his claim fit one of the statutory exceptions noted in *Cook*." *Id.* at 1310 n.8.

In like fashion, we held in *Young v. Shinseki* that "[w]hen VA fails to consider new and material evidence submitted within the one-year appeal period pursuant to § 3.156(b), and that evidence establishes entitlement to the benefit sought, the underlying RO decision does not become final." 22 Vet.App. at 466. In *Young*, this Court explained that holding otherwise would be inimical to § 3.156(b)'s purpose of "provid[ing] a claimant-friendly effective date rule for awards based on evidence received while a claim is on appeal or before the appeal period expires" by "creat[ing] the possibility that VA, by not considering evidence submitted during the one-year appeal period following the RO decision and simply waiting for the RO decision to become final, [could] deprive [an] appellant of the earlier effective date" authorized by § 3.156(b). *Id.* at 469. The *Young* majority did not share the view of the concurring judge in that case that its reading of § 3.156(b) conflicted with *Cook*. *Cf. id.* at 472-74 (Lance, J., concurring).

In any event, notwithstanding the dissent's erroneous reading of *Beraud*, we do not see any way in which the Federal Circuit could have reached the disposition it did in that case if its understanding of *Cook* aligned with that of our dissenting colleague. Although the Federal Circuit in *Beraud* did not cite *Cook*, the most logical and obvious reason for this was the Federal Circuit's determination that the *Cook* rule was not relevant to the consideration of finality in light of VA's transgression of § 3.156(b). In sum, *Cook* is not in conflict with the precedent of this Court or the Federal Circuit, both of which have held that § 3.156(b) is an exception to the rule of finality. *Beraud*, 766 F.3d at 1404; *Bond*, 659 F.3d at 1367; *Young*, 22 Vet.App. at 466; *see also AG*, 536 F.3d 1310 n.8.

At bottom, the dissent is based on its author's belief that *Beraud* was wrongly decided by the Federal Circuit. Witness, for example, his continued emphasis on the facts that Mr. Mitchell could

11

have appealed the September 2003 decision, challenged its determination that new and material evidence had not been submitted, and raised the fact that VA never responded to the December 1973 audiogram, but failed to do so, *post* at 19, even though the Federal Circuit explicitly rejected almost identical objections in *Beraud*, *see* 766 F.3d at 1406 n.1. Predicated on the—as we have explained—unnecessary belief that *Beraud* and *Cook* are in conflict, our dissenting colleague calls upon the Federal Circuit to take this case en banc and overrule *Beraud*. *Post* at 20. This case, however, must be decided on the law as we find it, not on the law as we would devise it. *See United States v. Microsoft Corp.*, 253 F.3d 34, 118 (D.C. Cir. 2001) (en banc) (per curiam) ("Appellate decisions command compliance, not agreement."). We note that the Secretary filed a petition for rehearing en banc in *Beraud*, and, on April 16, 2015, the Federal Circuit issued a per curiam order denying that petition. *Beraud*'s interpretation of § 3.156(b) is controlling here and requires remand.

Accordingly, because the RO's September 2003 denial of service connection for a hearing loss disability did not render the October 1973 decision final, *see Beraud*, 766 F.3d at 1406 n.1, the Court will reverse the Board's finding to the contrary, *see Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013) (explaining that reversal is appropriate "where the Board has performed the necessary factfinding and explicitly weighed the evidence" and this Court, based "on the entire evidence, . . . is left with the definite and firm conviction that a mistake has been committed"); *Brokowski v. Shinseki*, 23 Vet.App. 79, 85 (2009) (noting that the Court reviews the Board's finding that a claim is not pending for clear error).

Further, the Court will remand the matter to the Board to provide a determination directly responsive to Mr. Mitchell's December 1973 submission and assign an effective date consistent with 38 U.S.C. § 5110(a) and 38 C.F.R. § 3.400(q). *See Young*, 22 Vet.App. at 469 (remanding for the Board to make the threshold determination required by § 3.156(b) and to assign an appropriate effective date); *see also Shade v. Shinseki*, 24 Vet.App. 110, 117 (2010), explaining that § 3.156(a)'s requirement that evidence raise a reasonable possibility of substantiating the claim "does not create a third element for new and material evidence," but rather "suggests a standard that would require reopening if newly submitted evidence, combined with VA assistance and considering the other evidence of record, raises a reasonable possibility of substantiating the claim"); *id.* at 121 (clarifying that the language of § 3.156(a) "does not require new and material evidence as to each previously

12

unproven element of a claim"; instead, it compels reopening whenever a claimant submits new and material evidence "as to an unestablished fact from the previously denied claim").

On remand, Mr. Mitchell is free to present any additional arguments and evidence to the Board in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for [the Board's] decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and must be performed in an expeditious manner in accordance with 38 U.S.C. § 7112.

### III. CONCLUSION

After consideration of the parties' briefs, the record on appeal, and the governing statutes, regulations, and case law—especially the Federal Circuit's *Beraud* decision—the Board's January 7, 2013, finding that the October 1973 rating decision denying Mr. Mitchell's August 1972 claim for service connection for a hearing loss disability was rendered final by the RO's subsequent September 2003 denial of that claim is REVERSED. The portion of the Board decision denying an effective date earlier than February 22, 2007, for the grant of service connection for a hearing loss on that basis is SET ASIDE and that matter is REMANDED for additional development and readjudication consistent with this decision. Finally, the veteran's appeal of the Board's disposition of his claim for an earlier effective date for entitlement to disability benefits for tinnitus is DISMISSED.

KASOLD, *Judge*, dissenting: The question before the Court involves the scope of 38 C.F.R. § 3.156(b) and *Beraud*, and whether the failure of the Secretary to render an essentially interlocutory,[8] non-merits determination causes a claim to remain open – even after a final decision ultimately is rendered on the merits of the claim – until the Secretary renders the interlocutory determination.

---

[8] BLACK'S LAW DICTIONARY 889 (9th ed. 2009) (defining "interlocutory" as a decision that does "not constitut[e] a final resolution of the whole controversy"). Although the majority describe my noting that a § 3.156 determination is an interlocutory determination as a "rhetorical device" employed to "minimize the importance" of the determination, *ante* at 7, they wholly fail to discern my intent, which is simply to describe exactly what such a determination is so that the failure to render such a determination might be properly examined. Significantly, the majority neither dispute the term's application here nor explain why using accurate terminology affects the importance of the decision.

In addition to *Beraud*, the majority cite *Young*, 22 Vet.App. 461 (2009), *Charles*, 587 F.3d 1318 (Fed. Cir. 2009), and *Bond*, 659 F.3d 1362 (Fed. Cir. 2011), in support of their holding today that a claim remains open – regardless of notification to a claimant that his claim is denied and notice how to appeal such decision – until a formal determination in accordance with § 3.156(b) has been made on whether information submitted by a claimant during the administrative-appeal process constitutes new and material evidence that is deemed to have been filed with the underlying claim. Such a holding, however, ignores the fact that the § 3.156(b) determination is an interlocutory determination as opposed to a final decision on a claim. Neither case law nor common sense support the concept that a claim remains indefinitely open – with all subsequent decisions on the merits of the claim essentially rendered null and void, even after the claimant was provided notice that a final decision had been rendered and notice how to appeal – until such an interlocutory, non-merits determination is rendered.

Indeed, the error in today's holding is apparent when one considers that it means a final decision on a claim affirmed by this Court, the Federal Circuit, and even the Supreme Court, would not close out an earlier claim for the same benefits if the Secretary had not rendered an interlocutory determination explicitly stating whether evidence submitted within the administrative-appeal period of the earlier claim was new and material. Such a broad concept not only is not supported by case law, it also violates the Federal Circuit's en banc holding in *Cook v. Principi*, 318 F.3d 1334, 1341 (Fed. Cir. 2002) (en banc) that even grave procedural errors are not an exception to finality.

*Scope of § 3.156(b)*

The only requirement imposed by § 3.156(b) is that the Board must consider any new and material information submitted during the administrative-appeals process as having been filed with the underlying claim. 38 C.F.R. § 3.156(b) (2015). Specifically, § 3.156(b) states:

> (b) Pending claim. New and material evidence received prior to the expiration of the appeal period, or prior to the appellate decision if a timely appeal has been filed (including evidence received prior to an appellate decision and referred to the agency of original jurisdiction by the Board of Veterans Appeals without consideration in that decision in accordance with the provisions of § 20.1304(b)(1) of this chapter), *will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period*.

14

*Id.* (emphasis added).

Succinctly stated, the regulation requires interlocutory consideration of whether evidence submitted during an administrative-appeal period is new and material and to be deemed filed with the underlying claim.

*Young, Charles, and Bond*

In citing *Young, Charles,* and *Bond* collectively in support of the majority's holding that a claim remains open until there is an explicit determination on whether information submitted during the administrative-appeals process is new and material and deemed submitted with the underlying claim, the majority err by ignoring the importance of the fact that each of the cited cases involved a claim on appeal that did not have a final decision.[9]

For example, *Young* involved a 1995 claim that was denied in a 1996 regional office (RO) decision. The claimant submitted additional information within the administrative-appeal period. The RO and Board viewed that information as a claim for increased benefits and that claim was the subject of several interim decisions. The case came before the Court to address, inter alia, the effective date of benefits for the so-called increased-rating claim. The Court remanded the matter because the Board decision rejected an earlier effective date without considering (1) whether the material submitted within the administrative-appeal period was new and material, or (2) whether the evidence might support an effective date as of the date of the original and underlying 1995 claim. Succinctly stated, no final decision on the merits of the underlying claim had ever been rendered such that all issues remained subject to dispute.

Similarly, *Charles* involved an original claim for disability benefits filed in 1980 that was decided that same year. The claim remained pending because the claimant submitted additional information within the administrative-appeal period and the Secretary took no action. The claimant submitted another claim in 1982, which was treated as a claim to reopen and ultimately deemed abandoned, and the claimant filed yet another claim to reopen in 1991 which resulted in an award

---

[9] Although the majority state that the factual differences between the case on appeal and the cases they cite are not relevant because the cited cases are only used to explain controlling interpretations of § 3.156(b), the factual differences are germane because the statements must be read within their factual context. *See Cohens* and *Lasovick*, both *infra*.

of benefits with an effective date as of the date of the 1991 claim to reopen. The claimant appealed the effective date, and this Court affirmed on the view that the 1982 claim became final by virtue of the abandonment, which ended the pending status of the 1980 claim. The Federal Circuit noted that the abandonment of a claim provided no notice to a claimant that his claim had been denied and therefore could not serve to close any earlier, pending claims for the same benefits. Thus, an effective date back to the underlying and original 1980 claim remained a viable issue because there was no final decision closing it out; the only other claim, the one filed in 1991, could not be final because it was on appeal before the Federal Circuit. Succinctly stated, there was no final decision closing out the 1980 claim.

Likewise, *Bond* involved a claim filed in 1996 that was decided in a 1997 RO decision. The claimant filed additional information within the administrative-appeal period, which the RO treated as an increased rating claim and denied in 1998. The claimant timely appealed the 1998 RO decision, and that was the claim that was before the Federal Circuit; thus, none of the issues relating to the 1998 claim were final. The Federal Circuit held that the RO's treatment of the additional information as an increased rating claim did not satisfy § 3.156(b), which requires new and material evidence to be considered as filed with the underlying claim. Because no determination had been made regarding whether the submitted information was new and material, the underlying 1996 claim remained open, and the matter was remanded for further adjudication of the proper effective date.

Each of these cases involved the failure of the Secretary and the Board to properly consider a claimant's submission of evidence after a RO decision and during the administrative-appeal period. None of these cases involved a final decision on the underlying claim for which notice of finality and how to appeal had been provided to the claimant.

Only *Beraud* involved a final decision for which notice of finality and how to appeal had been provided to the claimant and a holding that such a final decision nevertheless left the underlying claim in an unadjudicated state because the interlocutory decision of whether evidence submitted during the administrative-appeal period was new and material had not been made. But, *Beraud* is distinguishable on its facts.

*The Scope and Application of Beraud*

Every decision must be read in the context of its facts. As Chief Justice Marshall stated:

> It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the Court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.

*Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399 (1821); *see also Lasovick v. Brown*, 6 Vet.App. 141, 149 (1994) (recognizing that language quoted from a particular opinion, "although universal in scope, does not constitute binding precedent beyond the facts there before the Court"). Applying this principle, *Beraud* does not control the outcome in this case.

*Beraud* involved a 1985 claim that was denied that same year. During the administrative-appeal period, the claimant submitted additional information regarding the location of more service medical records. The RO never replied. Beraud filed claims to reopen in 1992 and 2002 that were denied because he had not submitted new and material evidence. He did not appeal those decisions. He filed another claim in 2004 and submitted a medical opinion tying his disability to service that resulted in the award of benefits. He sought an effective date back to the date of his 1985 claim, but an earlier date was denied because his 1985 claim had become final by virtue of the denial of his 1992 claim to reopen. The Federal Circuit focused on § 3.156(b) and noted that the regulation, as interpreted by *Bond*, required a decision that directly responded to whether the information submitted within the administrative-appeal period was new and material. Noting that the information identified by Beraud during the administrative appeal period associated with his 1985 claim had never been obtained and that no decision had ever been rendered on whether it was new and material, the Federal Circuit concluded that the later decisions did not close out the 1985 claim and the claim therefore remained open.

Although my colleagues in the majority downplay the significance of the fact that the information identified by Beraud had never been obtained, the Federal Circuit essentially highlighted

this fact by introducing this failure with the telling word "Indeed."[10] *See Beraud*, 766 F.3d at 1404 ("Indeed, the dissent noted that the medical records which the RO said it needed in 1985 'appear to be yet unobtained.'" (quoting *Beraud v. Shinseki*, 26 Vet.App. 313, 322 ((2013) (Bartley, J., dissenting)). The Federal Circuit noted this fact again in its discussion surrounding the inapplicability of the presumption of regularity in that case because the presumption would involve consideration of "records [VA] never obtained." *Id*. at 1407. And, this fact was again noted in a footnote when the Federal Circuit observed that nothing in the 1990 RO decision informed the claimant that the "*missing* service medical records were ever considered for any purpose." *Beraud*, 766 F.3d at 1406 n.1 (emphasis added).

Indeed, concluding that the fact that the information referenced by Beraud's 1985 letter had never been obtained was the material fact that resulted in the Federal Circuit's majority decision, is the only way to explain why the Federal Circuit reached a conclusion so strikingly different from the then extant case law. *See Cook v. Principi*, 318 F.3d 1334, 1341 (Fed. Cir. 2002) (en banc) (holding that grave procedural errors are not an exception to finality);[11] *compare Beraud*, 766 F.3d at 1407 (holding that a claim remained open for failure to render a decision regarding whether new and material evidence had been submitted even when there were subsequent decisions on the same claim

---

[10] I do not dispute the majority's view that the Federal Circuit was "absolutely clear" that *Beraud*'s error was not providing a § 3.156 determination. In Mr. Mitchell's case, it certainly was error for the 1973 RO not to provide the required § 3.156 interlocutory determination, and that error kept the RO decision from becoming final. But that error could have been raised in the processing of Mr. Mitchell's 1999 claim to reopen, with the right to appeal an adverse decision, and when that claim became final, it rendered the RO decision final too. *See supra* at 15-16 (discussing *Young*, *Charles*, and *Bond*). As discussed in the text of my dissent, to hold otherwise expands *Beraud* beyond its facts and runs afoul of *Cook.*

[11] Despite the majority's position that *Cook* and *Beraud* are not in conflict because *Cook* permits regulatory exceptions to finality and *Beraud* recognized § 3.156 as an exception, *Beraud* does not mention *Cook* or otherwise address its holding that grave procedural errors do not vitiate finality. Although the majority's view is possible – that the *Beraud* panel considered *Cook* – it surely is an overstatement to state that "the most logical and obvious explanation" for *Beraud*'s silence on *Cook* is that the Federal Circuit determined that *Cook* was not relevant. *Ante* at 11. I submit the panel would have discussed *Cook* and grave procedural error had the parties argued and the panel considered it, and I further suggest that the failure to discuss *Cook* and finality is more logically attributed to the failure of the parties to raise the issue. *See ICC Industries, Inc. v. United States*, 812 F.2d 694, 698 n.4 (Fed. Cir. 1987) (declining to address an issue that was not raised by the parties); *cf. Pederson v. McDonald*, 27 Vet.App. 276, 281-86 (2015) (en banc) (noting that this Court, like others, will generally not address an issue not raised by the appellant in an opening brief); *compare ante* at 11 (noting that the Federal Circuit explicitly explained why *Cook* was not applicable in another case). Moreover, no case, not even *Beraud*, holds that the failure to render a § 3.156(b) interlocutory determination precludes finality in all cases.

that had become final), *with Williams v. Peake*, 521 F.3d 1348, 1351 (Fed. Cir. 2008) (holding that a subsequent final adjudication of a claim which is identical to a pending claim that had not been finally adjudicated terminates the pending status of the earlier claim); *Juarez v. Peake*, 21 Vet.App. 537, 542 (2008) (holding that an unappealed denial of a request to reopen a claim for benefits for a disability rendered final both the request to reopen and the underlying, unadjudicated claim).

The failure to ever obtain the evidence referenced by the appellant also is the material fact that distinguishes the case now before us from *Beraud*. Unlike in *Beraud*, the information submitted in this case during the administrative-appeal period was in the file throughout the entire process of adjudications. To be sure, the submission of the information kept Mr. Mitchell's 1973 claim in an unadjudicated state, but this was only until the claim was adjudicated.

Mr. Mitchell could have asked the Secretary to adjudicate his claim, and the failure to do so could have been the subject of a petition for mandamus. But, Mr. Mitchell also could have submitted a claim to reopen and addressed the underlying unadjudicated claim at that time. He took the latter action. He sought to reopen his claim in 1999, and the issue of his unadjudicated claim –including the interlocutory matter of whether the information he had submitted during the administrative-appeal period was new and material and should be associated with the 1973 claim – was ripe for adjudication at that time. The decision on his 1999 claim – for the same benefit sought in the 1973 claim – became final when he did not appeal. At that time, even grave procedural errors could not leave the matter in an unadjudicated state. *See Cook*, 318 F.3d at 1341 (holding that grave procedural errors are not an exception to finality).

To read the concern of the *Beraud* majority beyond the facts in that case is to ignore the en banc holding in *Cook* that veterans must appeal even grave procedural errors or else the decision on their claim will become final. *Id.* at 1341; *see also Norton v. Principi*, 376 F.3d 1336, 1338 (Fed. Cir. 2004) (declining to disrupt the finality of an RO decision in a case where the claimant's disability rating was reduced, he received notice–albeit, notice that did not meet the applicable regulatory standard–and he did not appeal); *Tetro v. Principi*, 314 F.3d 1310, 1313 (Fed. Cir. 2003) (declining to disrupt the finality of a Board decision when the Secretary had not complied with the duty to assist but the claimant had not appealed).

Accordingly, *Beraud* should be limited to its material facts, and, if so viewed, it is not the controlling case here. Rather, this case is controlled by *Cook*, *Williams*, *Norton*, and *Tetro*. To hold otherwise is to eviscerate final decisions for which a claimant has been provided notice how to appeal solely because an interlocutory decision had not been rendered on whether information submitted during the administrative-appeal period is new and material and deemed as filed with an underlying claim. This cannot plausibly be the rule the Federal Circuit meant to establish for all cases; *Beraud* can and should be distinguished on its facts.

*Beraud Should be Reconsidered if it Cannot be Distinguished*

Although the majority has declined to limit *Beraud* to its facts, *see supra* at 19, the Federal Circuit should reject the majority's broad interpretation of *Beraud* and instead limit the case to its facts. Alternatively, the Federal Circuit sitting en banc should consider (1) overruling *Beraud*, or (2) explaining how the en banc decision in *Cook* is consistent with a holding that a claim, even after a final decision has been rendered on it, nevertheless remains unadjudicated because an interlocutory determination had not been rendered.

As the reader of my dissent might pick up, the claimant in *Beraud* never submitted his service medical records; rather, he referenced where they were located. *Beraud*, 766 F.3d at 1403. The failure of the Secretary to obtain, or try to obtain, those records was a duty to assist failure. And, duty to assist failures are the type of grave procedural errors that do not preclude finality. *See Cook*, 318 F.3d at 1341 (declining to vitiate finality when the claimant asserted a duty to assist violation).

It is difficult to understand how the failure to render a decision on an interlocutory matter – whether information submitted during an administrative-appeal period is new and material, and to be deemed filed with the underlying claim – can keep a claim in an unadjudicated state even after a final decision on the same claim has been rendered subsequent thereto, when other equally or more significant errors – such as the failure to obtain records, provide a medical examination, provide a Statement of the Case, provide a Supplemental Statement of a Case, or offer a decision on the merits – do not keep a claim pending after a subsequent decision on the same claim is rendered and becomes final.

Reconciling *Beraud* with the Federal Circuit's en banc and panel cases is even more difficult in light of the facts in *Beraud*. The information submitted in *Beraud* was simply a reference to

records that could be obtained; pursuant to § 3.156, that information, on its face, is not new and material, *see* 38 C.F.R. § 3.156(a) (defining "new and material" as "evidence not previously submitted" that "relates to an unestablished fact necessary to substantiate the claim"); *see also Voracek v. Nicholson*, 421 F.3d 1299, 1305 (Fed. Cir. 2005) (noting that appellant's statement was not material on its face). The referenced records might have been new and material, but the mere reference only raised a duty to assist issue, *see Ivey v. Derwinski*, 2 Vet.App. 320, 322 (1992) (noting that a claimant's reference to medical treatment and provision of the doctor's address was not new and material evidence, but did trigger the duty to assist), which, as noted above, does not keep a claim in an unadjudicated state.

*Conclusion*

In summary, I believe *Beraud* can and should be distinguished and limited to its facts, leaving the matter before us to be decided by application of *Cook* and *Williams*. I would affirm the Board decision.